Danny Kaye DOCKERY, Appellant,

v.

The BOARD OF PROFESSIONAL RE-
SPONSIBILITY OF THE SUPREME
COURT OF TENNESSEE, Appellee.

Supreme Court of Tennessee,
at Jackson.

Oct. 14, 1996.

Danny K. Dockery, Memphis, pro se.

Laura L. Chastain, Deputy Chief Disciplin-
ary Counsel, Nashville, for Appellee.

## OPINION

BIRCH, Chief Justice.

Danny Kaye Dockery, Esquire, appeals
the judgment of the Chancery Court of Shel-
by County suspending him from the practice
of law for specified violations of the Code of
Professional Responsibility committed in con-
nection with his representation of Deborah
Dalton. After a painstaking examination of
the record and a thorough consideration of
the issues presented, we find that the record
fully supports the trial court's judgment ex-
cept as to the amount of money Dockery
must pay Dalton as a prerequisite for rein-
statement.

I

The record indicates that Dalton was in-
jured in an automobile accident in September
1985. She received medical treatment at a
Memphis hospital and consulted a local attor-
ney to handle her claim. Soon thereafter,
she moved to the state of Florida, where she
obtained further medical treatment from Je-
rome M. Dolinsky, P.A., D.C. Also, she en-
gaged E. Randall Beider, a Florida lawyer,
to handle her claim for personal injury aris-
ing out of the automobile accident.

In December 1986, Dalton returned to
Memphis, terminated her agreement with
Beider, and retained Dockery to represent
her in her claim. She agreed to pay Dockery
a contingent fee of one-third of the proceeds
remaining after payment of medical ex-
penses. On March 17, 1987, Dockery, at
Dolinsky's request, agreed to withhold and
remit Dolinsky's fees from any recovery.

Evidently, Dockery negotiated Dalton's
claim to settlement. On November 17, 1987,
the insurer issued its check in the amount of

$7,500 in full settlement of Dalton's claim.[1] Dockery deposited this check into his escrow account on December 8, 1987.

On December 9, 1987, Dockery issued a check to Dalton in the amount of $2,500. The check is inscribed "Full settlement to close Dalton v. Coffey." Dockery did not inform Dolinsky of the settlement or that some of the proceeds remained in his escrow account. He did not remit any funds to Dolinsky at this point. Moreover, Dockery did not provide Dalton with an accounting or other statement showing how the funds received to her credit had been disbursed.

Dolinsky subsequently discovered that the case had been settled and funds disbursed. He waged an aggressive and persistent effort to collect his fee of $1,068 for medical services rendered. These efforts proved futile. On July 1, 1991, Dolinsky complained to the Board of Professional Responsibility that Dockery had not paid him.[2]

Dolinsky's complaint led to the initiation of formal disciplinary charges against Dockery. In a petition filed December 19, 1991, the Board of Professional Responsibility charged Dockery with violation of the following disciplinary rules:

DR 1–102(A)(1) (violating a disciplinary rule);

DR 1–102(A)(3) (engaging in illegal conduct involving moral turpitude);

DR 1–102(A)(4) (engaging in conduct involving dishonesty);

DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice);

DR 1–102(A)(6) (engaging in conduct adversely reflecting on fitness to practice law);

DR 2–106(A) (collecting or charging excessive fee);

DR 6–101(A)(1) (handling legal matter not competent to handle);

DR 6–101(A)(2) (handling legal matter without adequate preparation);

DR 6–101(A)(3) (neglecting legal matter entrusted to lawyer);

DR 7–101(A)(1) (failing to act diligently and promptly);

DR 7–101(A)(2) (failing to keep client informed of status of case);

DR 7–101(A)(3) (failing to provide client with sufficient information to make informed decision);

DR 7–101(A)(4) (failing to comply with employment contract);

DR 7–102(A)(8) (knowingly engaging in illegal or unethical conduct);

DR 9–102(A) (failing to properly deposit client funds);

DR 9–102(B)(1) (failing to promptly notify client of the receipt of funds);

DR 9–102(B)(2) (failing to properly identify client funds);

DR 9–102(B)(3) (failing to properly maintain records of client funds); and

DR 9–102(B)(4) (failing to promptly pay client).

## II

The disciplinary proceeding progressed; it soon became apparent that a settlement could not be effected. Accordingly, a hearing panel was appointed pursuant to Rule 9, § 6.4, Rules of the Supreme Court of Tennessee. The record reflects that during the discovery process prior to the formal hearing before the disciplinary hearing panel, Dockery's willful and persistent efforts to derail the process became a source of consummate frustration for the panel. Dockery seized every opportunity to thwart, stymie, and delay the orderly progress of the cause, and its procedural path is paved with Dockery's unkept promises and dilatory ploys. So egregious and blatant was Dockery's resistance that counsel for the Board sought and received orders of sanction pursuant to Rule 37.02(A) and (B), Tennessee Rules of Civil Procedure.[3]

---

**1.** The settlement check was made payable to Deborah Dalton, Danny Dockery, and the two other attorneys that Dalton initially consulted in this cause of action.

**2.** The record reveals that Dockery paid Dolinsky on May 21, 1992.

**3.** Under 37.02(A), where a party fails to obey a discovery order, the court may "order that the matters regarding which the order was made or

Sanctions notwithstanding, the hearing panel convened and took proof from several witnesses and from Dockery. His testimony, in the main, addressed matters more mitigating in nature, and he made no serious contest of the salient facts. In these circumstances, the facts upon which the violations were grounded stand virtually intact as alleged. The record reveals, nonetheless, that the panel extended to Dockery every modicum of "due process." Perhaps the best example of this deference is found in the panel's decision to permit Dockery to testify, thereby disregarding the sanctions previously requested and imposed.

After a full evidentiary hearing, the panel found that Dockery, indeed, had violated several sections of the Code of Professional Responsibility in connection with the Dalton matter. The panel's findings and conclusions are quoted as follows:

It is the finding of the Panel that in numerous instances over an extended period Respondent co-mingled entrusted funds with his personal funds, that he misapplied and misappropriated to his own use and benefit the funds entrusted to him. He failed to pay his client the amount she was owed and failed to maintain his records in a professional manner that would permit him to demonstrate what he had done with the settlement proceeds. The proof demonstrated a pattern by Respondent of mismanaging his escrow account, his escrow account records and using his escrow account for payment of personal and office expenses and showing no appreciation for the importance of maintaining his records accurately and doing this over an extended period of time. The acts and omissions of the Respondent constitute violations of the following provisions of the Code of Professional Responsibility:

DR 1–102 Misconduct . . .

DR 9–102 Preserving Identity of Funds of Property of a Client . . .

The Panel also finds a violation of T.C.A. § 23–3–201(3) . . . . [4]

Respondent's refusal and failure to appropriately respond to Disciplinary Counsel and the Board regarding allegations of ethical misconduct constitutes an additional violation of DR 1–102(A)(5)(6).

The panel imposed the following sanctions:

1. Suspension of license for two years;

2. Reinstatement to be conditioned upon:

A. Payment of $1,500 to Dalton, and

B. Successful completion of a three-hour legal ethics course at an accredited Tennessee law school.

Dockery prosecuted an appeal in the nature of a petition for writ of certiorari to the Chancery Court of Shelby County, a right provided by Supreme Court Rule 9, § 8.3. The trial court heard the matter, and again Dockery testified in his own behalf. At the conclusion of the hearing, the trial court entered an order adopting the findings of fact and conclusions of law reached by the panel and approved the discipline imposed.

### III

Dockery is before this Court as a matter of right pursuant to Rule 9, § 1.3, Rules of the Supreme Court of Tennessee. The issues are: (1) whether the trial court erred in refusing to admit certain evidence; and (2) whether the reinstatement conditions were reasonable.

Supreme Court Rule 9, § 1.3 limits our review to "the transcript of the record from the circuit or chancery court, which shall include the transcript of evidence before the hearing [panel]." Our standard of review is *de novo* upon the record of the trial court

any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order." Tenn. R. Civ. P. 37.02(A).

Rule 37.02(B) allows the trial court to enter "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." Tenn. R. Civ. P. 37.02(B).

4. Tenn.Code Ann. § 23–3–201(3) provides that any attorney, solicitor, or counselor-at-law admitted to practice in the courts of Tennessee may be disbarred or suspended from the practice of law for wrongfully retaining money or property of a client for an unreasonable period of time after a demand has been made.

with a presumption of correctness unless the evidence preponderates against the trial court's findings.[5] Tenn. R.App. P. 13(d); *Gillock v. Board of Professional Responsibility,* 656 S.W.2d 365, 367 (Tenn.1983); *Scruggs v. Bracy,* 619 S.W.2d 101 (Tenn. 1981).

Regarding the first issue, Dockery sought to introduce certain documents into evidence at the hearing in the trial court. The trial court sustained the objection to their admission on hearsay grounds. Rulings on the introduction of evidence are usually within the discretion of the trial judge and will not be reversed except for an abuse of that discretion. *State v. Campbell,* 904 S.W.2d 608, 616 (Tenn.Crim.App.1995); *State v. Baker,* 785 S.W.2d 132, 134 (Tenn.Crim. App.1989); *see also* Tenn. R. Evid. 104. We are unable to conclude that the trial court abused its discretion in refusing to admit the proffered evidence.

Even so, we have examined the questioned documents in light of Dockery's implication that he disbursed funds in payment of Dalton's medical bills for which he has received no credit. The documents proffered are not in the least probative of this implication, and the trial court's ruling on their admissibility was eminently correct.

In deciding what discipline to impose, the trial court considered, in addition to the other evidence, the following factors submitted by the Board as aggravating factors:

(1) Dockery's prior disciplinary offenses;

(2) Dockery's pattern of misconduct;

(3) Dockery's bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with disciplinary rules or orders;

(4) Dockery's submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(5) Dockery's refusal to acknowledge the wrongful nature of his conduct;

(6) the vulnerability of Dockery's victim;

(7) Dockery's substantial legal experience;

(8) Dockery's indifference to making restitution.[6]

As previously stated, the trial court suspended Dockery's license to practice law for two years. Although Dockery has not directly challenged the suspension, he has referred to it in a rather oblique manner. He has failed, however, to brief the issue or discuss it.

The trial court imposed two conditions for reinstatement; Dockery challenges both. The first condition requires that Dockery pay Dalton the sum of $1,500; Dockery maintains that he does not owe Dalton that amount. We are unable to determine from the record before us how the amount of $1,500 was derived. However, the record does amply demonstrate that Dockery has failed to pay or account for all sums owing to Dalton. We calculate the amount Dockery owes Dalton to be $1788.[7]

Regarding the second condition of reinstatement, Dockery argues that "requiring [him] to attend a Tennessee law school is not within the power of neither the petitioner or the Board of Professional Responsibility. This would require the participation of a party not in a relationship to either [himself] or the Board and is unreasonable." Ample precedent exists for conditioning reinstate-

---

5. The trial court's "review shall be on the transcript of the evidence before the hearing committee, its findings and judgment and upon such other proof as either party may desire to introduce. The trial judge shall weigh the evidence and determine the facts by the preponderance of the proof." Sup.Ct. R. 9, § 1.3.

6. These circumstances appear in *Standards for Imposing Lawyer Sanctions* § 9.22 (ABA 1986). The Board has adopted these standards for disciplinary matters.

7. The settlement for Dalton is $7,500. The attorney's fee is one-third after medicals are paid. The medicals for Dolinsky totaled $1,068. Subtracting the medicals from the settlement leaves $6,432. One-third of this as the attorney's fee leaves Dockery with $2,144, $976 of that going to Beider, the Florida attorney. Dalton is entitled to two-thirds of $6,432 or $4,288. Dalton has already received $2,500; therefore, she is due $1,788.

ment upon further legal education.[8] *See, e.g., Board of Professional Responsibility v. Bonnington,* 762 S.W.2d 568, 570 (Tenn.1988) (a lawyer suspended for one year or more must prove by clear and convincing evidence that the lawyer has the moral qualifications, competency, and learning in law required for admission to practice and that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice); *Disciplinary Counsel ex rel. Board of Professional Responsibility v. Davis,* 696 S.W.2d 528 (Tenn. 1985) (taking of bar examination condition to reinstatement).

In light of the record before us and applicable law, we are unable to conclude that the evidence preponderates against the trial court's findings, except as to the sanction requiring payment of $1,500 to Dalton. Accordingly, we enter judgment against Dockery in favor of Dalton in the amount of $1,788, which judgment must be satisfied as a condition of reinstatement. In all other respects, the judgment is affirmed.

DROWOTA, ANDERSON, REID and WHITE, JJ., concur.

**STATE of Tennessee, Appellee,**

v.

**Carl Lee McLEOD, Appellant.**

**STATE of Tennessee, Appellee,**

v.

**James YOUNG, Appellant.**

Supreme Court of Tennessee,
at Nashville.

Oct. 14, 1996.

---

8. We interpret "further legal education" to mean a regular curriculum course, not a continuing legal education course.

involving children. Problems notwithstanding, we must achieve a balance that fosters the important governmental interest in protecting children while maintaining fundamental fairness.

In each case before us, the trial court, pursuant to Tenn. R. Evid. 803(4), permitted a physician to testify concerning out-of-court statements made by a child-declarant. At issue is whether each trial court erred in admitting the respective statements. We consolidated the cases and granted review in order to clarify the criteria for determining, in cases involving allegedly abused child-declarants, whether a statement qualifies for admission into evidence under the exception to the hearsay rule as provided in Rule 803(4).

■ For the reasons discussed below, we hold today that in order to determine the admissibility under Rule 803(4) of a statement made by a child-declarant, the trial court shall conduct an evidentiary hearing outside the jury's presence. After considering all of the relevant evidence offered pertaining to the making of the statement, the trial judge shall admit the statement into evidence upon an affirmative finding that the conditions described in the rule have been satisfied.

I

■ Statements made for the purpose of medical diagnosis and treatment are admissible as an exception to the hearsay rule under Tenn. R. Evid. 803(4). The exception provides:

Statements made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment.[1]

We further observe that although Rule 803(4) ordinarily involves statements made to physicians, the scope of the rule applies to any person to whom a statement is made for purposes of or pertinent to medical diagnosis and treatment. See, e.g., State v. Rucker, 847 S.W.2d 512 (Tenn.Crim.App.1992)(statements made to

Jeffrey A. Devasher, Senior Assistant Public Defender, Pat McNally, Assistant Public Defender, Nashville, for Appellant McLeod.

James Young, pro se.

Mark J. Fishburn, Nashville, for Appellant Young.

Charles W. Burson, Attorney General & Reporter, Michael E. Moore, Solicitor General, Gordon W. Smith, Associate Solicitor General, Nicholas D. Bailey, Assistant District Attorney General, Nashille, T. Michael Bottoms, District Attorney General, Lawrenceburg, Robert C. Sanders, Assistant District Attorney General, Columbia, for State.

### OPINION

BIRCH, Chief Justice.

This consolidated appeal centers our attention on the broad, growing problem in child abuse cases of the admissibility of statements made by children during the course of a medical examination. The precise difficulty arises in attempting to apply evidentiary rules drafted with adults in mind to cases

1. Tennessee Rule Evidence 803(4) differs significantly from its federal counterpart, Fed.R.Evid. 803(4), in one respect. The federal rule allows "[s]tatements made for purposes of medical diagnosis *or* treatment," while the Tennessee version of the rule requires that the physician be consulted "for purposes of medical diagnosis *and* treatment." (emphasis added).

The language of Rule 803(4) sets forth the requirements to be met before such statements may be admitted under this exception. First, the statement must have been made for the purpose of medical diagnosis and treatment, describing the medical history, which includes past or present symptoms, pain, or sensations; *or,* second, if the statement addresses the inception or general character of the cause or external source of the problem, then the information in the statement must be reasonably pertinent to diagnosis and treatment.[2]

---

nurse). Commentators have also suggested that the Rule extends to other medical professionals and employees such as ambulance attendants, orderlies, hospital attendants, clerks, and administrative personnel. Neil P. Cohen *et al., Tennessee Law on Evidence* § 803(4).6 (3d ed.1995). However, in *State v. Barone,* 852 S.W.2d 216 (Tenn.1993), we declined to apply Rule 803(4) to statements made to psychologists.