IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 2, 2005 Session

## JAMES L. MILLIGAN, Jr. v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

Appeal from the Chancery Court for Knox County
No. 156269-1     William H. Inman, Senior Judge, by designation

No. M2004-01765-SC-R3-BP - Filed June 28, 2005

Pursuant to the provisions of Tennessee Supreme Court Rule 9, section 1.3, the Tennessee Board of Professional Responsibility ("the Board") appeals from an order of the Chancery Court for Knox County imposing the sanction of public censure upon James L. Milligan, Jr., Esq. ("Milligan"). The Board contends that the Chancery Court erred in concluding that: (1) Milligan did not misappropriate funds; (2) Milligan's use of a client's funds for personal purposes was not a serious violation; and (3) public censure is the appropriate sanction. Because we conclude that Milligan did misappropriate funds and did otherwise conduct himself in a manner inconsistent with the Rules of Professional Conduct, as will be hereinafter detailed, we have determined that suspension for a period of two years is appropriate.

**Tenn. Sup. Ct. R. 9 § 1.3; Judgment of the Chancery Court Affirmed as Modified**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

William Walter Hunt, III, Nashville, Tennessee, for the appellant, Board of Professional Responsibility.

Stephen W. Gibson and Ronald L. Grimm, Knoxville, Tennessee, for the appellee, James L. Milligan, Jr.

### OPINION

### I.  Facts and Procedural History

Milligan is an attorney whose practice in Knoxville consists, in the main, of personal injury and malpractice matters. This case involves three disciplinary complaints–two that allege misappropriation of clients' funds and one that alleges fraudulent conduct in representing a client.

Initially, two complaints were lodged against Milligan. The first, herein referred to as the "Howard Matter," alleged that Milligan had misappropriated funds from his client trust account. According to the complaint, Milligan wrote a check in the amount of $216.67 from his client trust account to his then-associate, G. Turner Howard, as commission for settlement of a client's lawsuit. Upon presentment to the bank, the check was dishonored, and the reason given was "insufficient funds." Milligan later paid Howard by cashier's check.

The second complaint, herein referred to as the "Johnson Matter," alleged that Milligan settled Kerry Johnson's personal injury claim for $16,000 without having first consulted Johnson, forged the signatures on the release and the check, procured a Notary Public in his office to falsely notarize the release, and deposited the funds into his personal account. Based on these two complaints, the Board, on April 26, 2000, filed a Petition for Temporary Suspension of Milligan's law license. On May 5, 2000, this Court granted the petition.

On June 19, 2000, this Court reinstated Milligan's license, pending a full disciplinary hearing. The reinstatement was conditioned upon Milligan employing Terry Hall, a Certified Public Accountant, to oversee the ongoing finances of Milligan's law practice and upon Milligan employing Leroy Bible, a Certified Fraud Examiner, to review some of Milligan's law office accounts. It was agreed that Bible would report those findings to the Board.

On August 17, 2000, the Board filed a Petition for Discipline against Milligan. The petition alleged, in pertinent part, the substance of the Howard and Johnson Matters.

On May 22, 2001, a third complaint, herein referred to as the "Bible Matter," was lodged. That complaint was based on a report submitted to disciplinary counsel by Leroy Bible; the report summarized Bible's review of Milligan's office accounts for the year 1999. According to Bible, there were financial improprieties in the firm's accounts, including its client trust account. He stated further that Milligan had not cooperated with his review. On August 23, 2001, the Board filed a Supplemental Petition for Discipline, essentially asserting the allegations in the Bible Matter.

A full disciplinary hearing before a panel of the Board was held on August 19-20, 2002. In the Howard Matter, the Hearing Panel concluded that Milligan had, in fact, misappropriated funds. Although the Panel acknowledged that the check to G. Turner Howard had been later paid by cashier's check, it noted that Milligan did not deny that the check had been returned for insufficient funds. Accordingly, the Hearing Panel found that Milligan had violated Tennessee Supreme Court

Rule 8, Disciplinary Rule[1] ("DR") 1-102(A)(4),[2] (5),[3] and (6);[4] and DR 9-102(B)(3).[5]

In the Johnson Matter, the Hearing Panel found that in April 1999, Kerry Johnson retained Milligan in a personal injury matter arising out of an automobile accident. Milligan later settled the suit for $16,000. Milligan admitted that he affixed the Johnsons' names[6] to the settlement check and release. He further admitted that he procured a notary in his office to falsely notarize the release document. Moreover, he admitted that in January 2000, he placed the settlement funds directly into his personal account and used the funds for his personal use.

Although Milligan claimed that he had prior oral authorization to settle Johnson's case in the range of $12,000 to $20,000, to deposit the funds into his personal account, and to personally use the settlement funds in their entirety with the payment of interest, the Hearing Panel found that Milligan's testimony was not credible and that Milligan's actions and office records were inconsistent with and contradictory to the claimed prior authorization. Specifically, the Panel found that there was no documentation authorizing him to settle Johnson's case and sign the settlement check and release. In addition, the Panel found that Milligan had later directed an employee to inform a medical creditor of Johnson that there had been no recovery and that no payment of the claim was possible. This was done despite the fact that Milligan had settled the case himself, whether with authority or without. Finally, the Hearing Panel alleged that Milligan procured affidavits from the Johnsons, ratifying the previous oral agreement.

Based on the foregoing, the Hearing Panel concluded that Milligan: (1) had settled the Johnson case without the client's authority; (2) had forged the signatures of Kerry and Kesha Johnson on the settlement check; (3) had forged the Johnsons' signatures on the release document tendered by opposing counsel; (4) had procured an employee to falsely notarize, after the fact, the forged signatures on the release document; (5) had deposited 100% of the settlement funds into his personal account despite having been previously advised by a law practice consultant to deposit all

---

[1]The proceedings in this case are governed by the Code of Professional Responsibility previously set forth in Rule 8 of the Tennessee Supreme Court Rules (2002). The Code was replaced on March 1, 2003, by the Rules of Professional Conduct.

[2]DR 1-102(A)(4) (2002) provides: "A lawyer shall not . . . [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

[3]DR 1-102(A)(5) (2002) provides: "A lawyer shall not . . . [e]ngage in conduct that is prejudicial to the administration of justice."

[4]DR 1-102(A)(6) (2002) provides: "A lawyer shall not . . . [e]ngage in any other conduct that adversely reflects on his fitness to practice law."

[5]DR 9-102(B)(3) (2002) provides: "A lawyer shall . . . [m]aintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them.

[6]The check was apparently made payable to Kerry and Kesha Johnson.

settlement proceeds into the trust account; and (6) had "procured false affidavits from the Johnsons in an effort to conceal his misconduct." Thus, the Panel found that Milligan had violated DR 1-102(A)(3),[7] (4), (5), and (6); DR 7-102(A)(3),[8] (4),[9] (5),[10] (6),[11] and (7);[12] and DR 9-102(A)[13] and (B).[14]

In the Bible Matter, the Hearing Panel found that Milligan had overdrawn his client trust account on at least twenty-four occasions during 1999, thereby incurring $806 in overdraft charges against the client trust account.[15] It noted that Bible's audit of forty-six cases from 1999 revealed thirty-two separate occasions upon which Milligan had withdrawn funds from the client trust account prior to the deposit of settlement proceeds related to the funds. These "early withdrawals" ranged from as far as 210 days prior to the settlement deposit to as recent as one day prior to the settlement deposit. Milligan admitted withdrawing attorney's fees in a number of cases prior to the time when

---

[7]DR 1-102(A)(3) (2002) provides: "A lawyer shall not . . . [e]ngage in conduct involving moral turpitude."

[8]DR 7-102(A)(3) (2002) provides: "In the representation of a client, a lawyer shall not . . . [c]onceal or knowingly fail to disclose that which the lawyer is required by law to reveal."

[9]DR 7-102(A)(4) (2002) provides: "In the representation of a client, a lawyer shall not . . . [k]nowingly use perjured testimony or false evidence."

[10]DR 7-102(A)(5) (2002) provides: "In the representation of a client, a lawyer shall not . . . [k]nowingly make a false statement of law or fact."

[11]DR 7-102(A)(6) (2002) provides: "In the representation of a client, a lawyer shall not . . . [p]articipate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false."

[12]DR 7-102(A)(7) (2002) provides: "In the representation of a client, a lawyer shall not . . . [c]ounsel or assist the client in conduct that the lawyer knows to be illegal or fraudulent."

[13]DR 9-102(A) (2002) provides: "All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable insured depository institutions maintained in the state in which the law office is situated."

[14]DR 9-102(B) (2002) provides:
  A lawyer shall:
  (1) Promptly notify a client of the receipt of the client's funds, securities, or other properties.
  (2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
  (3) Maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them.
  (4) Promptly pay or deliver to the client as requested by a client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive.

[15]The Hearing Panel, as well as the trial court, did not address in their findings any specific cases in Leroy Bible's Report. However, one matter involving Milligan's client, Michael Overton, was addressed in Bible's deposition and report, which was before both the Hearing Panel and the trial court. In addition, Bible testified regarding the Michael Overton case during the proceeding in the trial court.

-4-

the settlement proceeds were actually deposited in the trust account.

The Hearing Panel concluded that Bible's audit of Milligan's accounts "fully demonstrated that [Milligan had] failed to maintain adequate records and that Milligan persisted in maintaining an inadequate accounting system to support the client trust accounts." The Panel also determined that Bible's report documented the inappropriate deposit of settlement proceeds into Milligan's personal checking account instead of the client trust account. Bible's testimony was not controverted by Milligan. Based on the foregoing, the Hearing Panel found that Milligan had violated DR 1-102(A)(1),[16] (4), (5), and (6); DR 2-106(A);[17] DR 7-101(A)(4)(b)[18] and (c);[19] and DR 9-102(A)(2) and (B)(3).

Based on the above-described violations and the applicable aggravating and mitigating circumstances, the Hearing Panel ordered Milligan disbarred. Milligan appealed to the Chancery Court for Knox County pursuant to Tennessee Supreme Court Rule 9, section 1.3.

On appeal, the trial court did not take proof on the Howard matter. In its memorandum opinion, the court stated that Howard, in consultation with Milligan, had advised the Board of the matter and that Howard had taken responsibility for not having waited long enough for the check to clear. The court noted that a new accounting procedure had been implemented in Milligan's office since this incident. Thus, the trial court opined as follows: "This matter is de minimis, and need not be further noticed; it did not involve fraud or dishonesty or deceit."

In the Johnson Matter, the trial court accepted Milligan's testimony and rejected the Johnsons' testimony. The fact that Kerry Johnson is a convicted felon made for heightened drama regarding credibility decisions, but credibility aside, the trial court, addressing the Johnson Matter rather obliquely, suggested that Milligan had misappropriated funds in the Johnson case. Nevertheless, the court stated that according to Milligan, he had an oral agreement with the Johnsons which authorized Milligan to use his discretion and experience to enter into settlement negotiations with the insurance adjustor and to resolve the matter on their behalf. The court acknowledged that Milligan had signed the Johnsons' names to the release and deposited the money in his personal account but stated that the Johnsons were ultimately pleased with the settlement and executed affidavits ratifying the previous oral agreement. The court gave no weight to Kerry Johnson's recantation of his previous ratification of the agreement. In sum, the trial court found that Milligan

[16]DR 1-102(A)(1) (2002) provides: "A lawyer shall not . . . [v]iolate a disciplinary rule."

[17]DR 2-106(A) (2002) provides: "A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee."

[18]DR 7-101(A)(4)(b) (2002) provides: "A lawyer shall not intentionally . . . [f]ail to carry out a contract of employment entered into with a client for professional services, but a lawyer may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105."

[19]DR 7-101(A)(4)(c) (2002) provides: "A lawyer shall not intentionally . . . [p]rejudice or damage the client during the course of the professional relationship, except as required under DR 7-102(B)."

had merely "exercised poor judgment" in his handling of the Johnson case.

Regarding the Bible Matter, the trial court stated that Milligan had made errors in judgment, but it emphasized that he had corrected those errors. The court acknowledged that the disciplinary rule addressing the need for preserving the identity of funds and property of a client "was violated on occasion" and that those violations were "unacceptable and sanctionable." However, the court made much of the fact that Bible never found a client who had received less than what he or she was due, a fact which "greatly lessen[s]" the seriousness of the violation, according to the trial court. Finally, the court pointed out that Milligan had been required to pay Bible approximately $85,000 for his services.

Based on the trial court's determinations, it concluded that public censure, not disbarment, was the appropriate sanction. The Board appealed pursuant to Tennessee Supreme Court Rule 9, section 1.3.

## II. Standard of Review

This matter is before this Court as a result of the Board's appeal pursuant to Tennessee Supreme Court Rule 9, section 1.3, which provides the following:

> Either party dissatisfied with the decree of the circuit or chancery court may prosecute an appeal direct to the Supreme Court where the cause shall be heard upon the transcript of the record from the circuit or chancery court, which shall include the evidence before the hearing committee.

This Court's standard of review is de novo upon the record of the trial court with a presumption of correctness given to the trial court unless the evidence preponderates against those findings. Bd. of Prof'l Responsibility v. Slavin, 145 S.W.3d 538, 546 (Tenn. 2004).

## III. Analysis

In this appeal, the Board contends that the public censure recommended by the trial court is an insufficient sanction. According to the Board, at a minimum, Milligan is guilty of misappropriating client funds, forging a client's signature on a settlement check and a release, causing a notary to falsely notarize a client's signature, and placing client funds in his personal account. Milligan, on the other hand, makes no serious factual contest. Instead, he contends, with regard to the handling of trust funds, that he simply made a series of accounting mistakes that do not implicate a serious disciplinary violation. As to the Johnson Matter, Milligan continues to insist that Johnson orally authorized the settlement and the "loan" of the proceeds to Milligan. He emphasizes that no client suffered monetary loss. He does not, however, deny that he signed the Johnsons' names to the settlement check and release, caused a notary public to falsely notarize the Johnsons' signatures, and placed the Johnsons' funds in his personal account, all in violation of ethical rules.

We conclude that Milligan did misappropriate funds in the Howard Matter. The record establishes, and Milligan did not deny, that he wrote a check on his client trust account that was later returned for insufficient funds. The check was written as payment for Howard's work on a case that had settled. Thus, the funds for payment should have been in the client trust account before any disbursements were made. In this regard, Milligan violated DR 1-102(A)(1), (4), (5), and (6); and DR 9-102(B)(3).

Next, we consider the Johnson Matter. Even were we to assume, as Milligan urges, that Johnson authorized Milligan to settle the case within a specified range, Milligan's conduct bears close examination. It is undisputed that Milligan used Johnson's money for personal purposes. Further, it is undisputed that Milligan signed both the Johnsons' names to a release and had a notary falsely notarize the signatures. Clearly, such conduct involves dishonesty, fraud, deceit, or misrepresentation in violation of DR 1-102(A)(4), whether or not he acted with the Johnsons' permission. In addition, such conduct is clearly "conduct that is prejudicial to the administration of justice" in violation of DR 1-102(A)(5); and "conduct that adversely reflects on his fitness to practice law" in violation of DR 1-102(A)(6). We find these violations to be very serious and indicative of conduct that should not and will not be tolerated.

Also, in the Bible Matter, the record establishes, and Milligan did not deny, that Milligan had overdrawn his client trust account on at least twenty-four occasions during 1999. Most egregious is the case of Michael Overton, a client. The record indicates that Milligan settled Overton's case on May 7, 1999, for the amount of $50,000. This amount was deposited in Milligan's trust account on the same day. Milligan disbursed to Overton $29,924.21 on May 28, 2002. Between May 7, 1999, and May 28, 2002, the balance in Milligan's trust account dipped below $29,924.21.[20] Indeed, after depositing the proceeds, Milligan incurred overdraft charges of $766 from May 8, 1999, through December 31, 1999, on this trust account.

Moreover, Milligan admitted that he had used client funds before the settlement proceeds had been deposited in the client trust account. Milligan also did not deny that he had placed client funds in accounts other than the client trust account–one of such accounts was his personal account. Thus, we conclude that Milligan did, in fact, misappropriate funds in violation of DR 1-102(A)(1), (4), (5), and (6); DR 2-106(A); DR 7-101(A)(4)(b) and (c); and DR 9-102(A)(2) and (B)(3).

Because we have concluded that the record before us establishes that Milligan misappropriated funds and otherwise conducted himself in a manner inconsistent with the Code of Professional Conduct, as we have detailed, we must now determine the appropriate sanction. The Hearing Panel concluded that the appropriate sanction required by the record was disbarment. On review, however, the trial court concluded that public censure was appropriate. Thus, we are offered two conclusions–one imposing the maximum sanction possible, and the other a sanction close to the minimum. Milligan chiefly insists that his conduct does not support the sanction of disbarment.

---

[20]We are willing to assume that $20,075.79 of the $50,000 represents Milligan's fees and costs.

The Board has adopted the Standards for Imposing Lawyer Sanctions promulgated by the American Bar Association. Bd. of Prof'l Resp. v. Maddux, 148 S.W.3d 37, 40 (Tenn. 2004). Those standards provide that "disbarment is an appropriate sanction for conduct involving dishonesty, fraud, deceit, or misrepresentation when the lawyer engages in serious criminal conduct or any other intentional conduct that 'seriously adversely' reflects on the lawyer's fitness to practice law." Id. (citing Standards for Imposing Lawyer Sanctions § 5.11 (Am. Bar. Ass'n ed. 1986)). The Standards further provide that suspension is appropriate when "'a lawyer knowingly engages in criminal conduct . . . that seriously adversely reflects on the lawyer's fitness to practice.'" Maddux, 148 S.W.3d at 41 (quoting Standards for Imposing Lawyer Sanctions § 5.12 (Am. Bar Ass'n ed., 1986)).

In determining the appropriate sanction, this Court recognizes that "[w]e must evaluate each instance of attorney discipline in light of its particular facts and circumstances." Maddux, 148 S.W.3d at 40. However, "we must also consider the sanctions that have been imposed in prior cases that present similar circumstances so as to maintain consistency and uniformity in disciplinary proceedings." Id.

The misuse and misappropriation of clients' funds is, indeed, a serious violation. This Court has previously reviewed similar cases of misappropriation, and in one, Board of Professional Responsibility v. Bonnington, 762 S.W.2d 568, 571 (Tenn. 1988), an attorney served as the administrator of an estate and improperly withdrew funds from the estate for his personal use. Although the attorney self-reported the misappropriations to his firm, the probate judge, and the Board of Professional Responsibility, as well as made restitution to the client, the trial court imposed, and we affirmed, a four-year suspension based on the misappropriation of funds. Id. at 568, 571.

In Disciplinary Board of the Supreme Court v. Banks, 641 S.W.2d 501, 502 (Tenn. 1982), an attorney entered into an agreement with a client whereby he would invest a sum of money for the client and advise the client of any transactions made. Without notice to the client, the attorney loaned the funds to two different corporations in which he, the attorney, held the controlling stock. In his defense, the attorney claimed that the client had made an outright loan to him and that he had agreed to pay her ten percent interest on those funds. The trial court concluded, as did we, that the preponderance of the evidence did not support the attorney's contention. This Court noted that the attorney never intended to embezzle the funds from the client, but the mishandling of funds warranted a one-year suspension. Id. at 504.

In Dockery v. Board of Professional Responsibility, 937 S.W.2d 863 (Tenn. 1996), the attorney negotiated an automobile accident claim to settlement and deposited the funds in his escrow account. The attorney had previously agreed to withhold and remit the doctor's fees. Upon settlement, the attorney failed to remit any of the funds to the doctor. In addition, the attorney failed to provide the client with an accounting or other statement showing how the funds had been disbursed. The Hearing Panel found that the attorney had commingled entrusted funds with his personal funds, had misapplied and misappropriated to his own use and benefit the funds entrusted to him, and had failed to maintain his records in a professional manner and imposed a two-year

suspension. The trial court approved the two-year suspension imposed by the Hearing Panel, and this Court affirmed. Id. at 865, 867.

Whether one concludes that Milligan's conduct was "criminal," as the Hearing Panel found, or a series of inadvertent mistakes, as the trial court found, it is apparent to us, on de novo review, that Milligan's conduct seriously and adversely reflected on the lawyer's fitness to practice law. Not only did Milligan misappropriate client funds, he also procured a false notarization of the release in the Johnson Matter. This conduct involves dishonesty and deceit. Such conduct also seriously and adversely reflects on his fitness to practice law. Based on the violations and the relevant case law, it is apparent that Milligan's sanction must involve a period of suspension.

In determining the appropriate period of suspension, we consider also any applicable aggravating and mitigating circumstances. "Aggravating and mitigating circumstances are any considerations or factors that may justify an increase or reduction in the degree of discipline to be imposed." Maddux, 148 S.W.3d at 41. In the case at bar, the Hearing Panel found and applied the following five aggravating factors: (1) Milligan received a public censure in 1994; (2) Milligan received a public admonition in 1995; (3) Milligan received a private informal admonition in 1987; (4) in 1999, Milligan (as required by the Board) consulted with and was advised by Suzanne Rose, the "Tennessee Bar Law Practice Management Consultant," about recommended changes in his accounting procedures and failed to comply with her recommendations; and (5) Milligan failed to fully cooperate with Leroy Bible in direct violation of a Supreme Court order.

After a thorough review of the record, we are unable to conclude that Milligan did not cooperate with Leroy Bible's audit. Although there is testimony that Milligan was evasive in response to Bible's questioning, there is insufficient evidence showing that he deliberately thwarted Bible's investigation. However, the evidence does support the remaining four aggravating factors (his three prior sanctions and his failure to properly comply with Suzanne Rose's recommendations).

The Panel also found and applied one mitigating factor: that Milligan "ultimately made good the checks returned for insufficient funds and there is no evidence that any individual lost money as a result of [Milligan's] actions." We agree that this factor should mitigate any sanction we impose, and we have considered it as a mitigating factor.

Accordingly, based on the severity of Milligan's violations, the applicable aggravating and mitigating circumstances, the relevant case law, and the entire record, we conclude that a two-year suspension from the practice of law is appropriate. It is further ordered that Milligan shall comply in all respects with Tennessee Supreme Court Rule 9, and specifically with section 18 regarding the obligations and responsibilities of suspended attorneys. Costs of this review are taxed to the appellee, James L. Milligan, Jr., or his surety, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE