Ronald K. NEVIN

v.

**BOARD OF PROFESSIONAL RE-SPONSIBILITY OF The SUPREME COURT of Tennessee.**

Supreme Court of Tennessee,
at Nashville.

June 4, 2008 Session.

Oct. 27, 2008.

William R. Willis, Jr. and Alan D. Johnson, Nashville, Tennessee, for the appellant, Ronald K. Nevin.

Nancy S. Jones, Chief Disciplinary Counsel, James A. Vick, Deputy Chief Disciplinary Counsel, and Krisann Hodges, Disciplinary Counsel, for the appellee,

Board of Professional Responsibility of the Supreme Court of Tennessee.

## OPINION

JANICE M. HOLDER, C.J., delivered the opinion of the court, in which WILLIAM M. BARKER, CORNELIA A. CLARK, and GARY R. WADE, JJ., and FRANK F. DROWOTA, SP. J., joined.

We granted this appeal to determine whether the Chancery Court properly affirmed a Board of Professional Responsibility Hearing Panel's six-month suspension of the appellant, Ronald K. Nevin. Nevin argues that the Hearing Panel erred in finding that he violated several disciplinary rules and in finding aggravating circumstances. He also argues that the six-month suspension is not commensurate with sanctions imposed in similar cases or the relevant American Bar Association Standards for Imposing Lawyer Sanctions. After reviewing the record of the proceedings before the Hearing Panel and the Chancery Court, we affirm the Chancery Court's judgment.

## Background

Ronald K. Nevin ("Nevin") was admitted to the practice of law in Tennessee in 1972. In addition to his private law practice, Nevin served as the public guardian for Davidson County from 1975 to 1999.[1] As public guardian, Nevin handled hundreds of cases involving conservatorships and guardianships. Specifically, Nevin managed "the financial affairs and sometimes the personal affairs" of those people under conservatorships and guardianships. According to Nevin, these clients were "disabled" because they could not manage their own affairs.

---

1. A public guardian is appointed by a county's legislative body. Tenn.Code Ann. § 30-1-401 (2007).

On February 1, 2000, the Board of Professional Responsibility ("Board") filed disciplinary proceedings based on Nevin's handling of three cases in which he was appointed as either conservator, guardian, or personal representative. The Board alleged that Nevin violated disciplinary rules with regard to trust fund matters and failed to discharge his duties with reasonable diligence. The evidence presented before the Hearing Panel with respect to the three cases, much of which was stipulated by the parties, is summarized below.

*Conservatorship of Cara Sneed Pyle*

On October 30, 1997, Nevin was appointed conservator for Cara Sneed Pyle, a nursing home resident, and he received $82,551.70 from a prior conservator. The property management plan adopted by the probate court in July 1997 reflected that Pyle's expenses exceeded her income and that her funds would be depleted in eight to ten months.

On December 8, 1997, the probate court ordered Nevin to list Pyle's house and seventeen acres of land with a real estate agent and to sell the contents of Pyle's house at a public auction. Although the sale of Pyle's personal property garnered $36,237.57, Nevin did not comply with the order requiring him to list Pyle's house and seventeen acres for sale.

On December 17, 1997, Nevin used Pyle's funds to buy a six-month certificate of deposit ("CD") for $50,000, even though the property management plan indicated that Pyle would need the money for living expenses prior to the CD's maturity date. In March 1998, Nevin bought a second six-month CD for $20,000.

In May 1998, when Pyle's funds became insufficient to pay her expenses, Nevin transferred $25,000 from his client trust account to Pyle's conservatorship account. Nevin testified that he did not liquidate the CDs because of the penalties for early withdrawal and because he did not believe anyone would be harmed:

> Her conservatorship account was low on funds that were necessary to pay her living expenses. The $50,000 certificate of deposit was going to mature the next month, and if I had redeemed that early, there would have been a penalty for early withdrawal. . . .
>
> I knew at the time as the fiduciary over her funds and of the funds in the trust account that no one would lose any money. It was not going to be necessary to pay any clients that had funds in the trust account that sum of money. There would be a sufficient balance to meet any obligations to clients that had funds in the trust account.
>
> And if it was absolutely necessary, I controlled the $50,000 certificate of deposit where I could have redeemed that. So I thought at the time that it was prudent and in her best interest to do that.

Nevin admitted that the money in his trust account belonged to his other clients and that he did not debit the $25,000 from a specific client's account.

On May 28, 1998, Nevin entered into a contract to sell 345 acres of Pyle's land for $890,000 without first seeking the required court approval for the sale. Nevin received $250,000 in earnest money, which he deposited into his client trust account rather than into Pyle's conservatorship account. According to Nevin, the money was not Pyle's "unless the Court approved the sale." A few weeks later, however, Nevin bought a 90–day CD for $300,000 by using the $250,000 in earnest money, along with an additional $50,000 that came from his client trust account or from Pyle's funds. Nevin did not know the exact source of the $50,000 because he failed to

make a notation indicating that his client trust account funds had been used to purchase the CD.

Other evidence revealed that Nevin transferred funds between his client trust account and Pyle's conservatorship account. When the $50,000 CD matured, Nevin deposited the proceeds into his trust account. Although Nevin claimed that he did so to repay the $25,000 that he had advanced to Pyle in May 1998, he made no entry to support his contention. On another occasion, Nevin transferred $20,000 to Pyle's account from his trust account as an advance on the $20,000 CD that had yet to mature. When that CD matured, Nevin deposited the proceeds into his trust account without making a notation of the transaction. Finally, Nevin also sold Pyle's stocks and bonds, at least five of which amounted to over $1,000 each, despite knowing that court approval was required for transactions over $1,000. Although Nevin testified that he intended to "get authorization or ratification of [his] acts afterwards from the court," he never did.

Nevin admitted that he had opened a conservatorship account for Pyle and that her money should not have gone into his client trust account. He further admitted that money he transferred into Pyle's conservatorship account belonged to other clients. Nevertheless, he insisted that he did not put his clients at risk and that his actions did not violate disciplinary rules. Nevin acknowledged that as Pyle's conservator he was obligated to adhere to the property management plan approved by the court and that there was no property plan or order to sell the 345 acres. Moreover, he did not file a petition seeking court approval for the sale until September 1998, after he had placed the earnest money in his trust account.[2] Although Nevin denied that he misappropriated Pyle's money, he conceded that his malpractice insurance carrier paid a settlement of $75,000 to Pyle's children. Nevin's payments to Pyle's nursing home were in arrears. Moreover, he admitted that he had to return $25,000 he owed to Pyle's account after withdrawing as her conservator.

### Estate of Pauline Doucette

On October 13, 1998, Nevin was appointed personal representative of the estate of Pauline Doucette.[3] Although the value of Doucette's estate was $193,286, Nevin filed an inventory with the probate court reflecting that the estate had a value of $84,599. Nevin was aware of CDs valued at more than $100,000 at the time he filed the inventory, but he omitted these assets from the inventory. Nevin blamed his secretary for the error even though he had reviewed the inventory before it was filed with the probate court. Nevin admitted that the error was brought to his attention when Doucette's children objected to his increased attorney fee from $150 per hour to $250 per hour. He also admitted that the probate court noted that "[f]urther review of the file indicates a troubling under-reporting of the assets of the Estate." Nevin testified that an amended inventory was filed within two weeks of learning of the error.

### Guardianship of Kenneth Jackson

On July 15, 1993, Nevin was appointed guardian of the property of Kenneth Jack-

---

2. The probate court denied permission for the sale and ordered that the earnest money be refunded to the buyer.

3. Nevin had been Doucette's conservator before her death, and he also had handled the estate of Joseph Doucette, Pauline's husband, who predeceased her.

son, a four-year-old child who had received a medical malpractice settlement. The court authorized Nevin to purchase a house for Jackson and his mother. At Nevin's direction, the house was titled in Jackson's name, and the deed indicated that the tax bills were to be sent to Jackson. The deed did not reflect that Nevin had purchased the house as guardian for Jackson or that Jackson was a minor. Nevin testified that he "believe[d] that the deed was correct because Kenneth Jackson was the owner."

Although Nevin later became aware that the child's mother was renting the house to a third party, he did nothing to ensure that the rental income went to the child. Moreover, due to Nevin's failure to establish a procedure to ensure that the tax bills were sent to him for payment, the taxes on the property went unpaid, and the house was sold at a tax sale. Nevin testified that he "did some things that [he] could have done differently and would have had a better result" but that he did not violate any ethical canons. Nevin admitted that his malpractice insurance carrier paid the child $38,376 for the loss he suffered when the house was sold at the tax sale.

*Other Testimony*

Several witnesses testified on Nevin's behalf. Judge Leon Ruben stated that Nevin had an "excellent" professional reputation and "very high" character. George Cate, a Nashville attorney, testified that Nevin was "a very competent probate lawyer" and a "good advocate for his clients." He believed that Nevin had a very good reputation in the legal community "in terms of his ability, his integrity, and his performance." Richard Cohen, an accountant and tax preparer, characterized Nevin's reputation as one of "very high integrity." Larry Cole, Davidson County's probate master from 1986 to 1991, testified that Nevin's accountings were timely and accurate. Similarly, Vic Lineweaver, Clerk of the Juvenile Court, testified as to Nevin's good character. Finally, Beth Boone testified that she had been appointed to serve as conservator in four cases that Nevin handled and that she saw no reason to fault his work or integrity. All of these witnesses conceded, however, that they had no personal knowledge of the Pyle, Doucette, or Jackson proceedings or of Nevin's trust account practices.

**Hearing Panel**

After considering the evidence, the Hearing Panel found that Nevin violated several provisions of the Code of Professional Responsibility in each of the three cases.[4]

In Cara Sneed Pyle's case, the Hearing Panel found that Nevin violated DR 9–102(B)(3)[5] by transferring money between his client trust account and Pyle's conservatorship account, by failing to preserve the identity of Pyle's money, and by commingling trust fund accounts without documenting the identity of funds. The Hearing Panel also found that Nevin failed to act with "reasonable diligence and promptness" in violation of DR 7–101(A)(1), "demonstrated neglect of a matter entrusted to [him]" in violation of DR 6–101(A)(3), and "improperly retain[ed] interest earned from funds and accounts in his trust" in

4. The Code of Professional Responsibility governs this case because Nevin's actions occurred prior to March 1, 2003, the effective date of the current Rules of Professional Conduct.

5. DR 9–102(B)(3) requires a lawyer to "[m]aintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them."

violation of DR 9–102(A). Finally, because Nevin was found to have violated other disciplinary rules, the Hearing Panel found him to be in violation of DR 1–102(A)(1).[6]

In the matter of Pauline Doucette, the Hearing Panel found that Nevin failed to act with "reasonable diligence" in violation of DR 7–101(A)(1) and violated a disciplinary rule as prohibited by DR 1–102(A)(1). Specifically, the Hearing Panel found that Nevin knew of the additional estate assets before filing the inventory, that Nevin misrepresented the value of the estate to the court, and that Nevin did not correct this misrepresentation until notified by the decedent's daughter.

Finally, in Kenneth Jackson's case, the Hearing Panel determined that Nevin failed to act with "reasonable diligence" in violation of DR 7–101(A)(1) and violated a disciplinary rule as prohibited by DR 1–102(A)(1). Specifically, the Hearing Panel found that Nevin failed to protect Jackson's assets by not ensuring that the property taxes were paid even though he knew or should have known that the taxes were due. The Hearing Panel also found that Nevin failed to safeguard the rental income from the property for the benefit of the child.

As a result of its findings, the Hearing Panel suspended Nevin from the practice of law for six months and mandated at least fifteen hours of continuing legal education in law office management, specifically the handling of client trust accounts and basic fiduciary obligations. The Hearing Panel first considered section 9.0 of the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") and found that the aggravating circumstances substantially outweighed the mitigating circumstances.

The Hearing Panel then considered section 4.12 which states that "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." The Hearing Panel also relied on section 4.42 when emphasizing that Nevin "both failed to perform services and . . . engaged in a pattern of neglect, each of which caused actual or potential injury." The Hearing Panel further found:

> In both the Pyle matter and the Doucette matter, [Nevin] submitted accountings to the Court that contained misrepresentations of information known to [Nevin]. In the Pyle matter, the accounting misrepresented the nature of deposits that [Nevin] made from his trust account. In the Doucette matter, the accounting misrepresented the assets actually held . . . .
>
> Although [Nevin's] knowledge of these misrepresentations might reasonably be inferred from the evidence presented, whether [Nevin] acted with knowledge or negligently makes no difference to the Panel's decision. Giving [Nevin] the benefit of the doubt . . . the Panel still finds that the aggravating circumstances . . . warrant increasing the penalty to a suspension.

In making these determinations, the Hearing Panel emphasized that Nevin failed to acknowledge any wrongdoing, blamed others for his actions, and was uncooperative, unremorseful, and not credible.

### Chancery Court

Nevin filed a petition for writ of certiorari in the Chancery Court, appealing the Hearing Panel's findings and conclusions pursuant to Rule 9, section 1.3 of the Tennessee Supreme Court Rules. After reviewing the evidence, the Chancery Court

---

**6.** DR 1–102(A)(1) provides, "A lawyer shall   not: (1) Violate a Disciplinary Rule."

determined that the Hearing Panel's findings were "clearly support[ed]" by the evidence and that the six-month suspension was "entirely appropriate and . . . clearly justified by the circumstances."

Nevin appealed to this Court.

## Analysis

### Appellate Review of Attorney Disciplinary Matters

The Supreme Court is the source of authority of the Board of Professional Responsibility and its functions. *Hughes v. Bd. of Prof'l Responsibility,* 259 S.W.3d 631, 640 (Tenn.2008); *Brown v. Bd. of Prof'l Responsibility,* 29 S.W.3d 445, 449 (Tenn.2000). Our duty to regulate the practice of law in this state includes the ultimate disciplinary responsibility for violations of the rules governing our profession. *See Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d 465, 469–70 (Tenn.2003). Accordingly, we examine judgments in light of our "inherent power [and] essential and fundamental right to prescribe and administer rules pertaining to the licensing and admission of attorneys." *In re Burson,* 909 S.W.2d 768, 773 (Tenn.1995). A hearing panel of the Board may conduct hearings and impose discipline for a lawyer's misconduct. Tenn. Sup.Ct. R. 9, § 6.4. The types of discipline include disbarment, suspension, temporary suspension, public censure, private reprimand, private informal admonition, and restitution. Tenn. Sup.Ct. R. 9, §§ 4.1–4.7.

An attorney or the Board may appeal a hearing panel's decision as prescribed in Tenn. Sup.Ct. R. 9, § 1.3, which sets forth the trial court and this Court's standard of review. In the present case, the trial court hearing occurred before July 1, 2006, the effective date of the current version of Tenn. Sup.Ct. R. 9, § 1.3. Therefore, our review of the trial court's decision is de novo upon the record of the trial court, with a presumption of correctness given to that court's findings unless the evidence preponderates against those findings. *Bd. of Prof'l Responsibility v. Curry,* 266 S.W.3d 379, 388 (Tenn., 2008).

### Violation of Disciplinary Rules

Nevin argues that the Chancery Court erred in affirming the Hearing Panel's findings with respect to the disciplinary rules. In addition, Nevin asserts that he was denied due process because he was found to have violated disciplinary rules that the Board of Professional Responsibility failed to cite in its original petition for discipline.

Here, the evidence showed that Nevin violated DR 9–102(B)(3), DR 7–101(A)(1), DR 6–101(A)(3), DR 9–102(A), and DR 1–102(A)(1) in his representation of Pyle. As the Chancery Court aptly described, Nevin repeatedly transferred funds between his trust account and Pyle's conservatorship account "in a hodge podge manner without proper documentation of the ownership of the funds." Indeed, Nevin engaged in multiple transactions in which he used his client trust account funds to make purchases, and his repeated failure to document his transactions ultimately led to his owing $25,000 to Pyle. In addition, the evidence showed that Nevin failed to list Pyle's house and acreage for sale as ordered by the court and contracted to sell Pyle's 345 acres without court approval.

With regard to Doucette, the evidence established that Nevin violated DR 7–101(A)(1) by failing to act with reasonable diligence and violated DR 1–102(A)(1) by violating a disciplinary rule. The proof established that Nevin omitted CDs totaling over $100,000 from the inventory that he filed with the probate court. As the

Chancery Court aptly observed, it was "inconceivable" that a fiduciary could omit from the inventory the estate's largest assets.

■ Finally, with regard to Jackson, the evidence established that Nevin violated DR 7–101(A)(1) by failing to act with reasonable diligence in paying property tax bills and violated DR 1–102(A)(1) by violating a disciplinary rule. As the Chancery Court noted, Nevin titled the property in the child's name, failed to ensure that the tax bills would be sent to Nevin, and failed to recover rental income that was due to the child. The child lost his home and rental income as a result.

■ Accordingly, we conclude that the Chancery Court properly affirmed the Hearing Panel. In reaching this conclusion, we reject Nevin's argument that his due process rights were violated because of omissions in the petition for discipline. Nevin argues that the petition did not include specific and clear allegations that he violated DR 9–102(A), DR 9–102(B)(3), and DR 1–102(A)(1). After reviewing the petition, however, we find this argument to be without merit. These disciplinary rules are referenced throughout the petition. Nevin also argues that his due process rights were violated because the petition did not allege a violation of Formal Ethics Opinion 89–F–121, Mechanics of Trust Accounting. This argument is also without merit. A Formal Ethics Opinion is not a disciplinary rule. It is an opinion issued by the Board of Professional Responsibility to assist members of the legal community in interpreting their legal obligations.

■ The only disciplinary rule Nevin was found to have violated that was not alleged explicitly in the original petition is DR 7–101(A)(1), failure to act with reasonable diligence and promptness. However, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tenn. R. Civ. P. 15.02. DR 7–101(A)(1) was alleged in the Board's pretrial brief, and Nevin did not object to its omission, or any other omission, in the original petition before or during the proceedings. Moreover, Nevin has failed to show that he was denied notice of the charges against him or that his defense was prejudiced in any way. As the Board notes, an attorney's exercise of reasonable diligence and promptness is the cornerstone of ethical conduct. As a result, we conclude that Nevin suffered no deprivation of due process by the Board's failure to cite DR 7–101(A)(1) in the petition.

*Aggravating Circumstances*

■ Nevin argues that the Hearing Panel erred in finding the following aggravating circumstances: (1) a pattern of misconduct; (2) multiple offenses; (3) refusal to acknowledge wrongful conduct; (4) vulnerability of the victims; and (5) substantial experience in the practice of law. *See* ABA Standards for Imposing Lawyer Sanctions § 9.22. Nevin asserts that at most he was negligent, that his errors caused no harm, that he eventually rectified his mistakes, and that he did not misappropriate any money or act with selfish motives. The Board asserts that the evidence supports the Hearing Panel's finding of aggravating circumstances.

As to a pattern of misconduct, the Hearing Panel correctly noted that a "single bookkeeping or accounting error might be explainable" but that Nevin's multiple errors in multiple cases justifies a finding of a pattern of misconduct. The Hearing Panel also found that Nevin's clients were particularly vulnerable because they needed a conservator or guardian to represent their interests. Indeed, Jackson was just

four years old, and Pyle was in a nursing home.

In addition, Nevin did not acknowledge any wrongdoing. When asked at the hearing whether he had done anything wrong, Nevin replied that "it depends on the definition of wrong." Although he admitted that he made mistakes, he asserted that the errors simply compounded and that his actions did not violate any ethical or disciplinary provision. On one occasion, he blamed his office staff for his errors.

Moreover, the evidence established that Nevin was an experienced lawyer who received his license in 1972. He had been Davidson County's public guardian for more than twenty years, and he handled hundreds of cases in that capacity. He knew or should have known the special obligations imposed upon a fiduciary representing individuals unable to handle their own affairs.

In short, the evidence in the record fully supports the Hearing Panel's finding of aggravating circumstances. Moreover, although Nevin claims that the Hearing Panel gave insufficient weight to mitigating circumstances, the record shows that the Panel considered Nevin's "(1) character or reputation and (2) remoteness of prior offenses"[7] before concluding that the aggravating circumstances outweighed the mitigating circumstances. We agree with this determination.

*Six–Month Suspension*

Next, Nevin contends that the punishment imposed was not commensurate with his conduct or comparable with punishments imposed in similar cases. Specifically, he asserts that he should have received a reprimand instead of a suspen-

sion because he did not intentionally engage in misconduct and no one was harmed by his conduct. He relies on *Bd. of Prof'l Responsibility v. Maddux*, 148 S.W.3d 37, 41 (Tenn.2004), in which this Court observed that suspension is appropriate when a lawyer knowingly engages in criminal conduct. He also relies on, among other cases, *Office of Disciplinary Counsel v. McKinney*, 668 S.W.2d 293, 299 (Tenn.1984), in which this Court upheld a public censure for misconduct that was grossly negligent but not intentional.

The Board argues that the six-month suspension was supported by the evidence in this case and is consistent with similar cases. The Board cites *Milligan v. Bd. of Prof'l Responsibility*, 166 S.W.3d 665, 667 (Tenn.2005), in which this Court imposed a two-year suspension for a lawyer who misappropriated funds. We noted that "[w]hether one concludes that Milligan's conduct was 'criminal' ... *or a series of inadvertent mistakes* ... Milligan's conduct seriously and adversely reflected on the lawyer's fitness to practice law." *Id.* at 674 (emphasis added).

Although Nevin's conduct was not as extreme as that in *Milligan*, there is no requirement that an attorney's actions be criminal before a suspension may be imposed. *See Sneed v. Bd. of Prof'l Responsibility*, 37 S.W.3d 886, 891 (Tenn.2000) (six-month suspension upheld for the attorney's negligent conduct). In *Bd. of Prof'l Responsibility v. Bonnington*, 762 S.W.2d 568 (Tenn.1988), an attorney served as the administrator of an estate and improperly withdrew funds from the estate for his personal use. We affirmed a four-year suspension even though the attorney self-

---

7. Nevin had a single minor infraction more than ten years earlier that was resolved by private informal admonition. The Hearing Panel did not consider its occurrence to be an aggravating or a mitigating factor, but it did consider its remoteness to be a mitigating factor.

reported the misappropriation to his firm, the probate judge, and the Board and made restitution to the client. Id. at 569–71. Similarly, in *Dockery v. Bd. of Prof'l Responsibility*, 937 S.W.2d 863, 863–64 (Tenn.1996), the attorney negotiated an automobile accident claim to settlement and deposited the funds in his escrow account. Upon settlement, the attorney failed to provide the client with an accounting or a statement showing how the funds had been disbursed. The hearing panel imposed a two-year suspension after finding that the attorney had commingled entrusted funds with his personal funds, had misapplied and misappropriated to his own use and benefit the funds entrusted to him, and had failed to maintain his records in a professional manner. This Court affirmed. *Id.* at 865, 867.

In short, the evidence in this case supports the six-month suspension imposed by the Hearing Panel. The evidence showed that Nevin knew or should have known that his actions were improper and potentially harmful. Given Nevin's repeated misconduct in all three cases, one may infer that his conduct was grossly negligent, if not reckless. Moreover, as described above, the evidence supports the Hearing Panel's finding of aggravating circumstances and its finding that these circumstances "far outweigh[ed]" the mitigating circumstances. Although no cases are identical, our review of the case law reveals that the punishment imposed in this case is consistent with punishments imposed on attorneys for similar misconduct.

### ABA Standards

■ Finally, Nevin argues that the Hearing Panel misapplied the ABA Standards because he should have received a reprimand instead of a suspension. His argument is based on his insistence that he did not cause any harm, that he made amends through his malpractice insurance, and that he did not act intentionally. Conversely, the Board maintains that the suspension was warranted under the ABA Standards.

■ Although the ABA Standards are not binding upon this Court in reviewing the punishment imposed on an attorney for misconduct, we conclude that the Hearing Panel properly considered at least two provisions. Under section 4.12, suspension is appropriate when the "lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." Similarly, under section 4.42, suspension is appropriate when a "lawyer engages in a pattern of neglect and causes injury or potential injury to a client." [8]

Despite Nevin's insistence to the contrary, the Hearing Panel found both actual injury and potential injury in this case. Indeed, Nevin's misconduct with respect to Pyle resulted in his owing $25,000 to Pyle's account even after he had withdrawn as her conservator, his failure to make payments to Pyle's nursing home, and his failure to sell Pyle's house and property as required by the property management plan. Similarly, his misconduct with regard to Jackson resulted in the loss of the four-year-old child's home. In sum, Nevin's six-month suspension was fully supported by the evidence and consistent with the ABA Standards.

### CONCLUSION

After reviewing the record, we conclude that the Chancery Court properly affirmed

---

**8.** Although the Hearing Panel cited to several additional ABA Standards, the bulk of its analysis rested on these two provisions, both of which are sufficient to support the suspension. Therefore, we decline to consider the remaining provisions.

the Hearing Panel's imposition of a six-month suspension. The Chancery Court's judgment is affirmed, and costs of the appeal are assessed against the appellant and his sureties, for which execution shall issue if necessary.