H. Owen MADDUX

v.

**BOARD OF PROFESSIONAL RE-
SPONSIBILITY OF the SUPREME
COURT OF TENNESSEE.**

Supreme Court of Tennessee,
at Knoxville.

May 5, 2009 Session.

July 2, 2009.

H. Owen Maddux (pro se) and Mike A. Little, Chattanooga, Tennessee, for the appellant, Hudson Owen Maddux.

Krisann Hodges, Nashville, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

This is a direct appeal of a trial court judgment affirming a hearing panel's order which found that an attorney had violated the Rules of Professional Conduct and suspended him from the practice of law for five months. The attorney argues on appeal that the suspension should be reduced to a public censure or a suspension of lesser duration. After careful review of the record, we find no error in the ruling of the hearing panel and, accordingly, we affirm the judgment of the trial court.

## Factual and Procedural Background

H. Owen Maddux, an attorney practicing law in Chattanooga, was retained on June 11, 1999, by Robert and Louise Livingston to represent them in a personal injury case arising out of a collision that occurred in the state of Florida on February 17, 1999. Mr. Maddux never filed suit for the Livingstons, and the statute of limitations expired.

On May 23, 2006, the Board of Professional Responsibility of the Supreme Court of Tennessee ("Board") filed a petition for discipline (docket number 2006–1601–3(C)–JV) against Mr. Maddux, charging that he violated several rules of professional conduct in his representation of the Livingstons. The petition was heard by the Board's hearing panel ("Panel") on December 14, 2006, and thereafter, the Panel entered a judgment suspending Mr. Maddux's license to practice law for a period of five months, based upon findings that he violated "numerous provisions of the Tennessee Rules of Professional Conduct, including Rules 1.1,[1] 1.2(a),[2] 1.3,[3] 1.4,[4] 1.8(a),[5]

---

1. "Rule 1.1. Competence.—A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Tenn. Sup.Ct. R. 8, RPC 1.1.

2. Supreme Court Rule 8, Rule of Professional Conduct 1.2, provides in pertinent part
 (a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter....
 ....
 (c) A lawyer may limit the scope of a client's representation if the limitation is reasonable under the circumstances and the client gives consent, preferably in writing, after consultation.

and 8.4(a),(c), and (d).[6]" In reaching its decision, the Panel also considered the fact that Mr. Maddux was previously suspended from the practice of law for thirty days by order of this Court entered August 27, 2004.

Upon Mr. Maddux's petition for writ of certiorari, a hearing was conducted by the Chancery Court for Hamilton County on May 1, 2008, and by order entered May 8, 2008, the Chancery Court affirmed the findings and conclusions of the Panel. Thereafter, Mr. Maddux filed a direct appeal to this Court pursuant to Tennessee Supreme Court Rule 9, section 1.3.

## Analysis

■■■ The source of authority of the Board of Professional Responsibility and its functions lies in the Supreme Court. *Nevin v. Bd. of Prof'l Responsibility,* 271 S.W.3d 648, 655 (Tenn.2008); *Brown v. Bd.*

*of Prof'l Responsibility,* 29 S.W.3d 445, 449 (Tenn.2000). Included in our duty to regulate the practice of law in this state is the ultimate disciplinary responsibility for violations of the rules governing the legal profession. *See Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d 465, 469–70 (Tenn.2003). Thus, we review judgments in light of our "inherent power ... [and] fundamental right to prescribe and administer rules pertaining to the licensing and admission of attorneys." *In re Burson,* 909 S.W.2d 768, 773 (Tenn.1995).

Tennessee Supreme Court Rule 9, section 1.3, provides that the trial court's review of a hearing panel's decision is restricted to the transcript of the evidence before the hearing panel unless "allegations of irregularities in the procedure before the panel are made." Tenn. Sup.Ct. R. 9, § 1.3; *see also Bd. of Prof'l Respon-*

---

(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning, or application of the law.

3. "Rule 1.3. Diligence.—A lawyer shall act with reasonable diligence and promptness in representing a client." Tenn. Sup.Ct. R. 8, RPC 1.3.

4. Rule 1.4. provides that
 (a) A lawyer shall keep a client reasonably informed about the status of a matter and comply with reasonable requests for information within a reasonable time.
 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
 Tenn. Sup.Ct. R. 8, RPC 1.4.

5. Tenn. Sup.Ct. R. 8, RPC 1.8. As pertinent to this case, section (a) of this Rule provides that

[a] lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest, adverse to the client unless:
(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client; and
(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3) the client consents thereto in a writing signed by the client.

6. Tenn. Sup.Ct. R. 8, RPC 8.4. As pertinent to this case, this Rule provides that "[i]t is professional misconduct for a lawyer to:
 (a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 . . . .
 (c) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
 (d) Engage in conduct that is prejudicial to the administration of justice[.]"

*sibility v. Love,* 256 S.W.3d 644, 651 (Tenn. 2008).

■ The trial court, after reviewing the transcript and any additional necessary evidence, has several options. The trial court may affirm the decision of the panel, remand the case for further proceedings, or reverse or modify the decision. A reversal or modification of the panel's decision may be made only if the trial court finds that "the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in light of the entire record." Tenn. Sup.Ct. R. 9, § 1.3. Although the trial court may affirm, remand, reverse, or modify a hearing panel decision, the trial court may not substitute its judgment for that of the panel as to the weight of the evidence on questions of fact. *Id.*

■ Our review of a trial court's decision in a disciplinary matter is also governed by Tennessee Supreme Court Rule 9, Section 1.3. Our standard of review under this section is virtually identical to the standard applicable to our review of an administrative agency's final decision in a contested case under the Uniform Administrative Procedures Act. *Love,* 256 S.W.3d at 653. This standard, as set forth in Tennessee Code Annotated section 4–5–322(h)(1)–(5)(A) (2005), provides as follows:

The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because

the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

Thus, in cases such as the one now before us where the grounds for reversal under subsections (1), (2), and (3) are not present, we must uphold the hearing panel's decision "unless the decision was either arbitrary or capricious, 'characterized by an abuse, or clearly unwarranted exercise, of discretion' or lacking in support by substantial and material evidence." *Hughes v. Bd. of Prof'l Responsibility,* 259 S.W.3d 631, 641 (Tenn.2008). This Court has recognized that a decision not supported by substantial and material evidence qualifies as arbitrary and capricious. In applying the substantial and material evidence test, it is our duty to determine whether the "decision is supported by 'such relevant evidence as a rational mind might accept to support a rational conclusion.' ... The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed." *City of Memphis v. Civil Serv. Comm'n of Memphis,* 216 S.W.3d 311, 316–17 (Tenn.2007) (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n,* 876 S.W.2d 106, 111 (Tenn. Ct.App.1993)). The substantial and material evidence standard has also been described "as requiring 'something less than a preponderance of the evidence ... but more than a scintilla or glimmer.' " *Jones v. Bureau of TennCare,* 94 S.W.3d 495, 501

(Tenn.Ct.App.2002) (quoting *Gluck v. Civil Serv. Comm'n,* 15 S.W.3d 486, 490 (Tenn. Ct.App.1999)). We are constrained, as is the trial court, from substituting our judgment for that of the hearing panel as to the weight of the evidence on questions of fact. *Love,* 256 S.W.3d at 653.

Our careful review of the record confirms that the following facts are supported by substantial and material evidence, the truth of which Mr. Maddux either specifically admitted or did not dispute in the December 14, 2006 hearing before the Panel.

On February 17, 1999, Louise Livingston was a passenger in a van which was rear-ended by a truck. The accident occurred in the state of Florida. Mrs. Livingston sustained various personal injuries as a result of the accident, including a knee injury, a bruised sternum, and two broken ribs. Mr. and Mrs. Livingston reside in Hixson, Tennessee, but were staying in Florida at the time of the accident. After the accident, Mrs. Livingston received some medical treatment in Florida. When the Livingstons returned to Hixson in April of 1999, she was still recovering from her injuries and had difficulty walking. The insurance company that insured the driver of the truck offered the Livingstons a settlement of $6,000; however, the Livingstons refused this offer. Thereafter, the Livingstons decided to hire an attorney and were referred to Mr. Maddux. They entered into a contingency fee agreement with Mr. Maddux on June 11, 1999. By his own admission, during the time he represented the Livingstons, Mr. Maddux was not licensed to practice law in Florida, was not competent in Florida law, and did not associate a Florida attorney to assist him in the case.

Upon retaining Mr. Maddux as their attorney, the Livingstons provided him with all medical records in their possession concerning Mrs. Livingston's injuries. During the first few months after Mr. Maddux began representing the Livingstons, he made some efforts in the case by collecting additional medical records and medical bills and writing to insurance adjustors. In June of 2000, Mrs. Livingston had a total knee replacement. While there appears to be some question as to whether that operation was causally related to the February 1999 accident, Mr. Maddux failed to directly communicate with any of her treating physicians as to whether the surgery was related to the accident. Instead, Mr. Maddux relied upon information that he gathered from Mrs. Livingston. Although Mr. Maddux mailed a letter to one of Mrs. Livingston's doctors on September 25, 2002, Mr. Maddux's time record contains no entries revealing any other activity in the case from September of 2002 until August of 2005. The statute of limitations ran on Mrs. Livingston's personal injury claim in the state of Florida on or about February 17, 2003.

The Livingstons attempted to contact Mr. Maddux by phone at various times from 2002 to 2005. However, they were not able to talk to him, and none of their calls were returned. Mr. Livingston testified that the only way he was able to contact Mr. Maddux was to go unannounced to Mr. Maddux's office. When he was actually successful in meeting with Mr. Maddux in this manner, Mr. Maddux's account of the case's progress was always that "the insurance company was changing representatives, and they needed time to study the case."

Finally, in January of 2005, Mr. Livingston conducted his own investigation into the status of the case and discovered that Mr. Maddux had never filed a complaint on behalf of the Livingstons. Mr. Livingston contacted the Board, and, upon its advice, he sent Mr. Maddux a registered

letter dated February 4, 2005. The letter indicated that Mr. Maddux's continued assertion that the insurance company was changing representatives would no longer suffice as an excuse for further delay in pursuing the case and charged that Mr. Maddux had failed to properly handle the case. Initially, the letter was not signed for and was returned, but after a second mailing, it was accepted on February 25, 2005. Although the letter included a request for a reply from Mr. Maddux, the Livingstons received no reply, and Mr. Livingston went to Mr. Maddux's office where Mr. Maddux once again advised him that the insurance company was changing representatives.

At some time after the letter of February 25, Mrs. Livingston filed a complaint with the Board regarding Mr. Maddux's failure to communicate with her and her husband regarding the status of their case. By letter dated May 26, 2005, the Board sent Mr. Maddux a summary of Mrs. Livingston's complaint, which stated as follows:

> Mr. Maddux will not get in touch with us. The only time we talk to him is when we go to his office. This has been going on for 6 years.
>
> He has stated that the defendant keeps changing lawyers and they need more time.
>
> Mr. Maddux asked me to bring all my medical records to him which we had already done in the very beginning.

The Board's letter requested that Mr. Maddux submit a response to this complaint summary within ten days; however, Mr. Maddux did not respond until August 2, 2005, despite additional requests from the Board by letters dated June 20, 2005, and July 5, 2005.

On or around August 20, 2005, Mr. Maddux contacted the Livingstons and proposed a settlement of the case. Mr. Maddux attested that his offer of settlement was prompted in part by Mrs. Livingston's complaint against him and by his feeling that he "owed them an obligation to pay them a sum of money." Mr. Maddux admitted that, in early 2005, he had learned that the statute of limitations applicable to the Livingstons' cause of action was not six years, as he had believed, but, rather, four years, pursuant to Florida Statutes Annotated Section 95.11(3), and that he had missed the deadline for filing suit on their behalf. He took no action, however, to discuss the missed statute of limitations with the Livingstons until after he was served with the disciplinary complaint.

On August 23, 2005, Mr. Maddux went to the Livingstons' home and offered them a settlement check in the amount of $9,000. It was at this time that Mr. Maddux first advised the Livingstons that he had failed to file their cause of action within the statute of limitations; however, he did not tell them that they had a potential malpractice action against him, nor did he advise them to obtain the advice of an independent attorney before accepting his offer of settlement, despite the manifest conflict of interest that existed between himself and the Livingstons in that regard.

The $9,000 settlement check was written on Mr. Maddux's lawyer trust account. Mr. Maddux admits that he had placed $10,000 of his personal funds in that account to cover the check, thereby commingling his personal funds with monies belonging to clients. Mrs. Livingston testified that she accepted the offer of $9,000 because she "didn't figure [she would] ever get anything else." Mr. Livingston testified that he had no idea whether $9,000 was a reasonable sum for settling the case, stating, "We could not possibly estimate how much we had spent or how much suffering [my wife] had done for a fair settlement." Mr. Maddux testified that

the Livingstons "could have asked for more and I probably would have paid it."

On May 23, 2006, the Board filed a petition for discipline against Mr. Maddux, and this petition was served upon Mr. Maddux by certified mail on May 25, 2006. Mr. Maddux did not file a response to this petition until July 7, 2006, despite the requirement of Tennessee Supreme Court Rule 9, section 8.2 that an answer to a petition for discipline be filed within twenty days of the date of service.[7]

## Rule Violations

Based upon the foregoing summary of facts, established by substantial and material evidence, we agree with the Board's conclusion that Mr. Maddux violated "numerous provisions of the Tennessee Rules of Professional Conduct, including Rules 1.1, 1.2(a), 1.3, 1.4, 1.8(a), and 8.4(a), (c), and (d)." Mr. Maddux violated Rules 1.1, 1.2(a), and 1.3 by failing to interview Mrs. Livingston's physicians as to whether injuries she sustained in the February 17, 1999 accident required that she have knee replacement surgery, by neglecting to investigate or otherwise pursue the Livingstons' case after September of 2002, and by failing to determine the applicable statute of limitations and file a complaint within the time allotted thereunder, thereby depriving the Livingstons of their cause of action against the party alleged to be responsible for Mrs. Livingston's injuries.

■ Mr. Maddux violated Rule 1.4 by failing to timely inform the Livingstons that the statute of limitations had expired on their claims and by failing to adequately apprise the Livingstons as to the status of their case. Specifically, Mr. Maddux failed to initiate contact with the Livingstons, return any of their phone calls, or meet with them, except when he was compelled to do so as a result of Mr. Livingston coming to his office unannounced.

■ Mr. Maddux violated Rule 1.8(a) by entering into a settlement agreement with the Livingstons where his interests and their interests were in conflict, without giving them an opportunity to seek the advice of independent counsel.

■ Mr. Maddux violated Rule 8.4(c) by leading the Livingstons to believe that his prosecution of their case could not proceed because the insurance company was changing representatives.

■ Mr. Maddux's violation of the additional Rules specified by the Panel also constituted a violation of subsections (a) and (d) of Rule 8.4. Mr. Maddux violated Rule 1.15(a) by commingling the personal funds he used to settle the Livingstons' case with client funds in his lawyer trust account.[8] Mr. Maddux also violated Rule 8.1(b) by failing to timely respond to the Board's letters requesting that he respond to the summary of Mrs. Livingston's complaint and by failing to timely respond to the disciplinary petition filed against him on May 23, 2006.[9]

7. As pertinent to this case, Tenn. Sup.Ct. R. 9 section 8.2 provides that "[t]he respondent shall serve an answer [to a disciplinary petition] upon Disciplinary Counsel and file the original with the Board within 20 days after the service of the petition."

8. Tenn. Sup.Ct. R. 8, RPC 1.15. Subsection (a) of this Rule provides, in relevant part, that

[a] lawyer shall hold property and funds of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property and funds. A lawyer in possession of clients' or third persons' property and funds incidental to representation shall hold said property and funds separate from the lawyer's own property and funds.

9. Tenn. Sup.Ct. R. 8, RPC 8.1. As pertinent to this case, this Rule provides that "a lawyer ... in connection with a disciplinary matter,

*Sanction*

 Mr. Maddux does not contend that the Panel erred in its conclusions regarding his violation of the designated Rules or that the trial court erred in affirming such conclusions. Rather, he argues that the Panel's suspension of his law license for five months was an excessive sanction, and he requests that this suspension be replaced by public censure or reduced in duration to two months. We decline this request and find no abuse of discretion in the Panel's imposition of a five-month suspension.

In determining an appropriate sanction when an attorney is found to have been guilty of professional misconduct, we are obliged to review all of the circumstances of the case at bar, and, for the sake of uniformity, we must review the sanctions that were imposed in other cases under similar circumstances. *See Bd. of Prof'l Responsibility v. Maddux*, 148 S.W.3d 37, 40 (Tenn.2004). We are also guided by the American Bar Association's Standards for Imposing Lawyer Sanctions (1986, as amended 1992) ("ABA Standards"), which have been adopted by the Board for disciplinary matters. *See id.* While no prior Tennessee case presents circumstances sufficiently similar to those in the present matter to aid us in our decision, we determine that the five-month suspension imposed by the Panel is well-supported under the ABA Standards.

First, we note that section 2.3 of the ABA Standards provides that "[g]enerally, suspension should be for a period of time equal to or greater than six months." We are not bound by the ABA Standards in determining an appropriate period of suspension, *see Nevin*, 271 S.W.3d at 658, and we may rule that a suspension of less than six months, as was imposed in this case, is appropriate. However, it is apparent from the language of this section that, once suspension has been determined to be an appropriate sanction, a suspension of five months does not exceed the period of suspension suggested by the ABA Standards. Additional sections of the ABA Standards provide that suspension, not public censure, is the appropriate sanction in this case.

Mr. Maddux's commingling of his personal funds with client funds warrants suspension under section 4.12, which provides that "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." Mr. Maddux's negotiation of a settlement with the Livingstons, without disclosing the conflict of interest between his and their positions warrants suspension under section 4.32, which states: "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client."

Mr. Maddux's failure to investigate the Livingstons' case after September of 2002, including his failure to interview Mrs. Livingston's doctors, his failure to determine the applicable statute of limitations, and his failure to preserve the Livingstons' cause of action by filing their complaint within the statutory period, warrants his suspension under section 4.42. This section provides that "[s]uspension is generally appropriate when . . . a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or . . . engages in a pattern of neglect

shall not . . . (b) . . . knowingly fail to respond to a lawful demand for information from [a]

. . . disciplinary authority."

[that] causes injury or potential injury to a client."

Finally, Mr. Maddux's communication to the Livingstons that the failure of progress in their case was due to a change of representatives by the defendant's insuror rather than Mr. Maddux's own neglect of the case warrants his suspension under section 4.62, which provides that "[s]uspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client."

Section 9.1 of the ABA Standards further provides that "[a]fter misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose." Aggravating factors which may be considered, as listed at section 9.2, include prior disciplinary offenses, a pattern of misconduct, multiple offenses, vulnerability of the victim, and substantial experience in the practice of law.

In August of 2004, Mr. Maddux's law license was suspended for thirty days by order of this Court for violation of various disciplinary rules in connection with his having unlawfully converted funds from his law firm in an amount exceeding $90,000. *See Maddux*, 148 S.W.3d at 38–42. Mr. Maddux's failure to investigate the Livingstons' case, his failure to communicate with them regarding the status of their case, and his misrepresentations as to the reasons the case was not progressing occurred on multiple occasions over a period of years and exhibited a continuing pattern of neglect and deception. The Livingstons were vulnerable victims in that they were both almost eighty years of age at the time they settled the case with Mr. Maddux, and Mrs. Livingston was physically handicapped for at least a period of the time she was represented by Mr. Maddux. And at the time he represented the Livingstons, Mr. Maddux had substantial experience in

the practice of law, having practiced since 1974.

In mitigation, Mr. Maddux states that he "has not been uncooperative in that he answered [the Board's] interrogatories and questions" and that he has "acknowledged wrongdoing" and "has express [ed] his sorrow at having missed the statute of limitations." The Standards provide at section 9.32 that "a cooperative attitude toward proceedings" may be considered in mitigation of sanctions. While it is true that Mr. Maddux cooperated by responding to the Board's interrogatories, he failed to timely respond to the summary of Mrs. Livingston's complaint despite the Board's requests, and he failed to timely respond to the disciplinary petition filed against him. And, while section 9.32 includes "remorse" as a mitigating factor to be considered in imposing sanctions, given the other factors in this case, we do not agree that Mr. Maddux's expression of regret is sufficient to merit a reduction in the sanction imposed by the Panel.

In sum, we hold that the Panel's decision to suspend Mr. Maddux's law license for a five-month period was warranted under the circumstances presented in this case.

## Conclusion

For the reasons stated herein and in accordance with the controlling standard of review requiring that a hearing panel's decision be upheld if supported by substantial and material evidence, we affirm the judgment of the trial court affirming the judgment of the hearing panel, including the panel's ruling that Mr. Maddux's law license be suspended for five months. Costs of appeal to this Court are taxed to H. Owen Maddux, for which execution may issue if necessary.