# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00041-CR

**Bill Boyd Kuhn, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2010-047, THE HONORABLE GARY L. STEEL, JUDGE PRESIDING

## CONCURRING AND DISSENTING OPINION

I join the majority's opinion and judgment affirming appellant's 12 convictions for indecency with a child by sexual contact. I respectfully dissent from the majority's opinion and judgment affirming appellant's conviction for continuous sexual abuse of a young child.

## BACKGROUND

M.K. is appellant's biological daughter. She was born on July 6, 1998, and was 12 years old, in the seventh grade, at the time of trial. M.K. testified that appellant "did something that he wasn't supposed to." She said her father "touched me and looked at me," explaining that he touched her breasts, "backside," and private parts.

She testified that her father touched her breasts "pretty much all of my life." He touched her breasts with his hands and sometimes his mouth. When he touched her breasts with his hand, sometimes his hand stayed still and sometimes it moved. Similarly, when he touched her

breasts with his mouth, sometimes his mouth stayed still and sometimes it moved. She testified that when appellant touched her breasts, they were either in his bedroom or on the couch in the living room, watching television or trying to sleep. M.K. was unable to put a number to how many times appellant touched her breasts, but testified that she thought he started touching her breasts before she went to kindergarten. Unable to answer whether he touched her breasts "fairly regularly or very seldom," M.K. indicated that appellant touched her breasts more than ten times. She testified that she did not know why appellant touched her breasts and that he never said anything when he touched her. She said she never asked him to touch her breasts. She acknowledged that she did tell her dad that her breasts hurt one time, when he hugged her too tightly.

M.K. testified that appellant touched her private parts with his hand and sometimes his mouth.[1] When he touched her private parts with his hand, sometimes his hand stayed still and sometimes it moved. Likewise, when he touched her private parts with his mouth, sometimes his mouth stayed still and sometimes it moved. She testified that his hand "went inside" when he touched her private parts, but she did not know how many times that had happened. M.K. testified that she did not know how many times her dad touched her private parts, but stated that he had been touching her private parts "as long as I can remember" and more than ten times. She said that she did not know why appellant touched her private parts and that he never said anything when he touched her there. She stated that she never asked him to touch her private parts. M.K. testified on cross-examination that appellant touched her private parts with his mouth more than once but was

---

[1] M.K. explained that the private part on a girl is "in between your legs."

unable to specify a particular time of day or month. She indicated that it happened "[s]ometimes in the summers[,] [s]ometimes the end of school. It just happened all sorts of times."

She also testified that appellant touched her backside with his hand, indicating that sometimes his hand stayed still and sometimes it moved when he touched her backside.[2] She provided no further testimony about appellant's contact with her backside, other than to state that she never asked him to touch her backside.

M.K. also testified that she laid in her dad's bed without clothes on. She said she took her clothes off because he told her to. She testified that after she took her clothes off, "all of the above" would happen, explaining that she meant that appellant would touch her breasts, private parts, and backside. She said this happened more than ten times and went on "as long as I can remember."

M.K. testified that appellant would come into the bathroom when she was showering to talk about what he was going to cook for dinner, what was on television, or things of that nature. Her dad would pull the shower curtain aside and peek inside. She said that she did not know how many times this happened, but it was more than once. M.K. testified that appellant would also come into the bathroom when her friends were showering and see them naked. M.K. indicated that this happened more than once.

She testified that she knew that masturbate means "to touch yourself." She said that on one occasion her dad taught her how to masturbate, but she did not ask him to teach her. In describing this incident, she stated that she was in the bathroom with her friends, S., B., and C.,

---

[2] M.K. described the backside on a girl's body as "[o]n the back side of you."

3

doing makeovers, and appellant came into the bathroom.[3]  M.K. did not remember what exactly

happened but testified that her dad started teaching them how to masturbate.[4]  She stated that he told

her to remove her clothes, put Vaseline on his hand, and then touched her private parts with his hand.

She testified that he also showed her how to touch herself by holding her wrist and moving her hand

so that her fingers touched her private part.  While M.K. indicated that appellant "sometimes" had

her touch herself, she gave no further testimony concerning that conduct beyond her testimony about

the masturbation lesson.

M.K. testified that she began menstruating "last year" but did not remember exactly

when.  She testified that her dad touched her breasts, private parts, and backside before she got her

period, and it was "more than one time."  She testified that most of the inappropriate touching

happened on his bed at nighttime.  M.K. testified that appellant usually wanted her to sleep in his

bed with him, and he became "really sad" or upset if she refused.  M.K. expressed that she did not

tell anyone about what her dad was doing to her because she was afraid he would hurt her, her

family, or her dog.

The only other witness for the State was Wayne Lehman, a detective with the Comal

County Sheriff's Office, who investigated the case and interviewed appellant on December 30, 2009.

The detective's testimony reflected that the sexual abuse of M.K. was reported to law enforcement

---

[3]  M.K.'s testimony reflected that S. and B., whom she knew from school, were her best
friends in the sixth grade.  C., a year or two younger than M.K., was a friend whom she met through
the son of one of her dad's friends.  M.K. testified that these girls came over to spend the night or
weekends at her house "fairly much."

[4]  M.K.'s responses to defense counsel's questions on cross-examination suggest that when
S. and B. were interviewed in connection with this case, they denied that appellant taught them
to masturbate.

4

on December 16, 2009. The State offered the videotape of appellant's voluntary statement along with a transcript of the recording.

On the video, appellant stated that his daughter, M.K., was 11 years old and in the sixth grade. He indicated that he and M.K. lived alone in his house. Appellant told the detective that he would visually check his daughter when she was taking a shower after she returned from her mother's house, explaining that M.K. would frequently return not having bathed for four or five days. He said that viewing her in the shower was not sexual, he was just checking to be sure she had no bruises or injuries. He agreed that, in hindsight, he had failed to set appropriate boundaries with his daughter. Although appellant denied sexually abusing his daughter, he expressed that he felt that he had wronged his daughter because he should have drawn "a line in the dirt"—the "breakover point" when a little girl becomes a young woman—earlier when M.K. started puberty, not later when she started her period. According to appellant, his daughter had started to develop a year ago and had just started her period.

During the interview, appellant admitted that he had touched his daughter in an inappropriate manner; however, he denied any sexual intent. He explained that when M.K. told him her breast was sore or aching, he would rub her breast with baby oil to make her feel better. He indicated that he used baby oil because M.K. "used to love to have baby oil rubbed on her back . . . when she was little bitty." He acknowledged during the interview that this rubbing of her breast was not appropriate but insisted it was never sexual. In his statement, appellant also admitted to teaching M.K. how to masturbate. He told the detective that his daughter was "relentless" in pursuing the topic with him and she would "rub herself raw" as a result of her efforts to masturbate. He said he

5

put baby oil on M.K.'s hand and placed her fingers on her "polly" or "little clit," showing her where and how to masturbate. Appellant insisted that teaching her how to masturbate was not sexual, he was simply trying to keep her from hurting herself, although he conceded that masturbation is self-gratification and that the purpose of masturbation is to please yourself.

During the interview, appellant denied peeking into the shower when M.K. and her friends were showering. He said he only went to the shower if someone called for him and needed something. He denied ever touching M.K.'s friends. He also said that when they talked about their breasts hurting or problems with masturbation, he told them to talk to his daughter.

Appellant admitted that during times when he sat on the couch with M.K. he "petted her"—he would "rub her little back," "rub her little butt," and "rub her legs"—but denied rubbing her vagina. He further denied ever touching his daughter—her privates or her breasts—in a sexual manner. He told the detective he never inserted his finger in her vagina, never had sexual intercourse with her, or penetrated her at all. He denied having sexual thoughts toward her.

## DISCUSSION

In his first point of error, appellant contends that the trial court erred by instructing the jurors in its jury charge for the continuous-sexual-abuse-of-a-young-child offense about the nonbinding nature of the dates alleged in the indictment.[5] He maintains that the trial court's instruction that the State was not bound by the dates in the indictment but only to proof that the

---

[5] The record reflects that the trial court submitted two separate jury charges to the jury: one relating to the continuous-sexual-abuse-of-a-young-child offense alleged in count one, the other relating to the 12 indecency-with-a-child-by-contact offenses alleged in the remaining counts.

offense occurred prior to the presentment of the indictment, combined with the instruction that the offense had no statute of limitations, authorized a conviction for conduct occurring before September 1, 2007, the effective date of the continuous-sexual-abuse-of-a-young-child statute. As the majority notes, this Court has previously addressed a similar jury-charge complaint and found such an instruction to be erroneous.[6] *See Martin v. State*, 335 S.W.3d 867, 876 (Tex. App.—Austin 2011, pet. ref'd). Relying on *Martin* and the State's concession,[7] the majority opinion assumes error and conducts the harm analysis.

Appellant did not object to the complained-of instruction regarding the nonbinding nature of the dates alleged in the indictment. Thus, the error does not call for a reversal of the conviction unless it was so egregiously harmful under the circumstances as to have denied appellant a fair and impartial trial. *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009)

---

[6] In *Martin v. State*, the defendant was charged with one count of continuous sexual abuse of a young child, six counts of sexual assault of a child, two counts of indecency with a child by sexual contact, and three counts of indecency with a child by exposure. *Martin v. State*, 335 S.W.3d 867, 869 (Tex. App.—Austin 2011, pet. ref'd). The complainant testified to sexually abusive conduct committed by the defendant both before the September 1, 2007, effective date of the continuous-sexual-abuse-of-a-young-child statute as well as after that date and after the complainant's fourteenth birthday. *Id.* at 870. Although the indictment alleged that the underlying sexual abuse acts were committed on dates during a 30-day or more period following the effective date of the statute until the complainant's fourteenth birthday, the court's jury charge instructed the jurors that the State was not bound by the specific dates alleged and that they could convict the defendant if the offenses were committed at any time prior to presentment of the indictment. *Id.* at 873. We found that the trial court had a duty to instruct the jurors on its own motion that they were not permitted to convict Martin under the continuous-sexual-abuse count for acts committed before September 1, 2007, and concluded that the jury charge was erroneous for the failure to do so. *Id.* at 876.

[7] Although the State disputed error in its brief, at oral argument the State effectively conceded that the trial court's jury charge was erroneous and argued only that the error did not result in egregious harm.

7

(reversal required only if error was so egregious and created such harm that defendant "has not had a fair and impartial trial"). Any harm that is inflicted by the erroneous jury charge must be "assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *see Ngo v. State*, 175 S.W.3d 738, 750 n.48 (Tex. Crim. App. 2005). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007) (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). We engage in this assessment to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. Egregious harm is a difficult standard to meet and must be determined on a case-by-case basis. *See Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Hutch*, 922 S.W.2d at 171.

In *Martin* we concluded that the jury-charge error was not egregiously harmful, in part because the evidence of Martin's sexually abusive conduct before September 1, 2007, could be considered by the jury as circumstantial proof of his conduct after that date and, more importantly, because there was legally sufficient evidence demonstrating sexually abusive conduct occurring after September 1, 2007, to support his conviction under the continuous-sexual-abuse-of-a-young-child count. *Id.* For similar reasons, the majority concludes that appellant did not suffer egregious harm here. I believe the instant case is distinguishable from *Martin* and disagree with the majority's conclusion.

8

*Entirety of the Jury Charge*

The majority notes that the application paragraph in the jury charge correctly sets forth applicable dates after the effective date of the statute and, further, that the application paragraph is the portion of the charge that authorizes the jury to convict. *See Hutch*, 922 S.W.2d at 172. However, in this case the instruction regarding the nonbinding nature of the dates alleged came immediately before the application paragraph. The effect was that the jury was essentially told that no proof of dates was required, other than proof of occurrence any time before the return of the indictment, right before it was given dates that did, in fact, have to be proven in order to prove this statutory offense. We must assume that the jurors read and understood the charge as a whole and that they took the challenged instruction into account when reading the application paragraph. *See Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011); *Hutch*, 922 S.W.2d at 172; *see also Martin*, 335 S.W.3d at 874 (application paragraph does not make abstract portion of charge less erroneous). Under these circumstances, I do not believe providing the correct dates in the application paragraph mitigates against a finding of egregious harm.

The majority also concludes that the limiting instruction included in the jury charge regarding appellant's extraneous conduct also weighs against a finding of egregious harm because although the jury could not lawfully convict appellant for continuous sexual abuse based on his conduct prior to September 1, 2007, the jury could consider evidence of sexually abusive acts committed before that date as circumstantial evidence of appellant's conduct after September 1, 2007. *See Martin*, 335 S.W.3d at 876; *see also* Tex. Code Crim. Proc. Ann. art. 38.37 (West Supp. 2012). In the *Martin* case, this Court found that there was sufficient evidence, with

9

specific temporal references, to support the jury's finding that two sexually abusive acts occurred after the effective date of the statute. Here, however, based on the evidence presented at trial, there was no way for the jury to differentiate between conduct occurring prior to September 1, 2007, and conduct taking place after that date. As such, the problem in this case is that the extraneous-offense instruction could not be applied to the evidence. Other than M.K.'s testimony that the acts of sexual abuse happened "before" she got her period, neither M.K.'s testimony nor appellant's statement provided any date reference for the acts of sexual abuse. In terms of frequency and duration, M.K. testified that the acts of sexual abuse happened "pretty much all my life," "as long as I can remember," "more than ten times," "all sorts of times," and "more than once." While this testimony indicates the sexual abuse happened repeatedly, it does not reflect *when* the sexual abuse took place—before or after September 1, 2007. There was no way for the jury to distinguish between the direct evidence of the alleged conduct and the circumstantial evidence of appellant's extraneous conduct. Thus, notwithstanding the extraneous-offense instruction, the instruction about the nonbinding aspect of the dates alleged in the indictment was not "corrected or ameliorated" in another portion of the charge. *See Ngo*, 175 S.W.3d at 752. There is nothing in the record to suggest that the jury did not follow the erroneous instruction and consider evidence of all acts of sexual abuse alleged to have occurred prior to the filing of the indictment, including those possibly occurring before the effective date of the continuous-sexual-abuse-of-a-young-child statute. I disagree with the majority that the inclusion of this limiting instruction weighs against a finding of egregious harm.

Unlike the majority, I would conclude that consideration of the entirety of the jury charge weighs in favor of a finding of egregious harm.

*The State of the Evidence*

Another basis on which this Court determined in *Martin* that the jury-charge error was not egregiously harmful was the evidence presented at trial. *Martin*, 335 S.W.3d at 876. In *Martin*, the evidence in the record supported a finding of guilt based on the evidence of sexually abusive acts that occurred after September 1, 2007, alone. *Id.* We were able to make this determination because the complainant gave a detailed account of the acts of sexual abuse in relation to the school year and calendar years as well as testimony regarding the frequency and duration of the abuse.[8] The evidence in *Martin*—providing date associations along with frequency and duration of the abuse—reflected legally sufficient evidence of appellant's sexually abusive conduct after September 1, 2007. Thus, the jury could have convicted appellant based on the evidence presented, even if the proper instruction had been given and the pre-September 1, 2007, acts were disregarded by the jury. Such is not the case here.

I disagree with the majority's conclusion that the jury in this case could have reasonably inferred that appellant committed at least two acts of sexual abuse, separated by a period of 30 days or more, after September 1, 2007. In the present case, M.K.'s testimony about the

---

[8] For example, she testified that, after stopping for several months, appellant resumed putting his penis in her mouth in December 2006 and continued throughout the 2007 calendar year. She stated that between December 2006 and December 2007, appellant put his penis in her mouth "[t]wo to three times a week. Sometimes not at all, though." She testified that when she turned 14 in January 2008, appellant was "still doing those things" she had described.

11

sexually abusive acts was not detailed in regard to dates, frequency, or duration. M.K. testified that appellant touched her private parts with his hands "as long as I can remember" and responded "yes" when asked if he did so "more than ten times."[9] She stated that he touched the inside of her private parts but did not know how many times. M.K. also indicated that appellant "sometimes" had her touch herself. Her testimony about appellant's teaching her how to masturbate is the most detailed account of the acts of sexual abuse in terms of associating a date reference or providing a time period. M.K. testified that her father taught her to masturbate when she was in the bathroom with her friends S., B., and C. Her earlier testimony indicated that her best friends when she was in sixth grade were S. and B. This suggests that the act of sexual abuse resulting from the masturbation lesson took place in sixth grade, which, since she was in the seventh grade at the time of trial in October 2010, would have been after the effective date of the continuous-sexual-abuse-of-a-young-child statute. However, this is evidence of only one act of sexual abuse.[10] M.K. did not indicate in her testimony that the masturbation lesson happened more than once.

---

[9] Some of the more detailed testimony regarding a date or time reference was when M.K. testified that appellant touched her private parts with his mouth more than once, "[s]ometimes in the summers[,] [s]ometimes the end of school. It just happened all sorts of times." However, she did not indicate which summers or the end of which school years. Moreover, aggravated sexual assault by contacting the genitals of M.K. with appellant's mouth was not one of the underlying acts of sexual abuse alleged in the continuous-sexual-abuse-of-a-young-child count of the indictment and could not, therefore, form the basis for that conviction.

[10] Arguably M.K.'s testimony about the masturbation lesson could constitute evidence of two acts of sexual abuse: one being when appellant put Vaseline on his hand and touched her private parts, the other being when appellant held M.K.'s wrist and moved her hand, causing her to touch her private parts. However, this does not constitute evidence of two acts of sexual abuse separated by a period of 30 days or more as required by the continuous-sexual-abuse-of-a-young-child statute.

The only other evidence of a date reference provided for the sexually abusive acts was the evidence pertaining to when M.K. began to menstruate. M.K. testified that appellant touched her private parts, breasts, and backside during "a time period before" she began menstruating.[11] She indicated she got her period "last year" but did not recall exactly when.[12] In his video statement, given December 30, 2009, appellant indicated that M.K. "just got her period," which suggests M.K.'s menstruation began in the latter part of 2009. So, M.K.'s testimony about the sexual abuse having occurred "before" her period appears to suggest that the abuse occurred sometime before the end of 2009. However, M.K.'s testimony does not indicate exactly when "before" her period was—weeks, months, or years before she got her period.

As a matter of public policy, child victims of crimes are not expected to testify with the same clarity and ability as expected of mature and capable adults. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). Thus, we do not expect a child victim to provide exact times or dates when testifying about sexual abuse. However, while proof of specific dates was not required in this case, based on the recent enactment of the continuous-sexual-abuse-of-a-young-child statute, some temporal markers are necessary to ensure that appellant was convicted for conduct prohibited by this statute. M.K.'s testimony about the abuse happening "all [her] life"—and the State's emphasis on the long-term nature of the abuse—failed to provide the temporal markers

---

[11] In her testimony, M.K. clarified that in answering the prosecutor's questions about sexual abuse "before" her period, she was talking about "a time period before" rather than "right before" she got her period.

[12] It is unclear from her testimony whether M.K. was referring to the last school year or the last calendar year.

necessary for the jury to determine that the sexually abusive acts occurred after the effective date of the statute.

Aside from admitting to teaching his daughter how to masturbate, appellant did not admit to engaging in conduct that would constitute an act of sexual abuse against M.K. at any other time.[13] His statement does not suggest that this masturbation lesson was more than a one-time incident. In fact, appellant denied any other conduct that might be construed as sexual abuse of M.K. Thus, the issue of the commission of at least two instances of sexual abuse separated by 30 or more days—at all, let alone after September 1, 2007—was a clearly contested issue in this case.

The majority opinion attempts to provide, by inference, date associations with the evidence presented at trial. The majority opines that the jury could have inferred that M.K. "started developing" in December of 2008 and that she got her period in late 2009. The majority also indicates that a jury could have further inferred that appellant engaged in "certain behaviors"—for example, "checking" on his daughter visually to make sure "that she's not hurt and she's well" and looking at her in the shower "to make sure she's okay"—during that time frame: after she started developing until she got her period. In addition, the majority concludes that, based on appellant's testimony that the breast rubbing incident occurred "six-to-eight months, a year" prior to the masturbation incident, the jury could infer that the breast rubbing incident happened some point after September 1, 2007. Even if these were reasonable inferences that a jury could make, they do not

---

[13] I do not include appellant's admission to rubbing baby oil on M.K.'s breasts here, as indecency by touching the breast of a child is not an act of sexual abuse for the purpose of the continuous-sexual-abuse-of-a-young-child statute. *See* Tex. Penal Code. Ann. § 21.02(c)(2) (West 2011).

14

support the majority's conclusion regarding inferences about when appellant's acts of sexual abuse under the continuous-sexual-abuse-of-a-young-child statute occurred.

The majority notes that in his statement to the detective, appellant admitted that when he and M.K. were sitting on the couch watching television, he would sometimes "rub her little back," "rub her little butt," and "rub her leg." Yet, while acknowledging that appellant did not provide specific dates regarding the above-described "petting" incidents, the majority nevertheless concludes that the jury could have reasonably inferred that these "and other incidents" had occurred after September 1, 2007, based in part on M.K.'s testimony during trial. However, as noted previously, M.K. provided no specific dates concerning any of appellant's conduct, but only a broad range of time that covered dates before and after the enactment of the continuous-sexual-abuse statute. In fact, according to M.K.'s testimony, the breast touching began before she started kindergarten—four years before the statute was enacted. The majority acknowledges that other than the masturbation lesson, the other incidents of abuse M.K. described were not associated with specific dates. Nevertheless, the majority concludes that appellant's statement regarding inappropriate behavior combined with M.K.'s testimony about the number of times incidents of abuse happened and where they occurred supports the reasonable inference that at least some of the incidents occurred after September 1, 2007. The majority further concludes that the inference that other non-criminal conduct[14] occurred after September 1, 2007, supports the additional inference that conduct

---

[14] By non-criminal conduct I refer to conduct that is not criminal under the continuous-sexual-abuse-of-a-young-child statute—petting, visual inspection, and the touching of M.K.'s breasts. As noted previously, the incidents of touching M.K.'s breasts, with appellant's hand or mouth, that constitute indecency with a child by contact are criminal acts but not criminal acts under this statute.

supporting the continuous-sexual-abuse charge also happened after September 1, 2007. I cannot agree with that conclusion.

Juries are permitted to draw reasonable inferences from the evidence, but they are not permitted to draw conclusions based on speculation. *Hooper v. State*, 214 S.W. 3d 9, 15 (Tex. Crim. App. 2007). An inference is a conclusion reached by considering other facts and deducing a logical consequence from them. *Id.* at 16. Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence. *Id.* Here, although the jury was free to make inferences from the evidence presented, neither the evidence at trial nor reasonable inferences therefrom support the conclusion that two acts of sexual abuse, separated by a period of 30 days or more, occurred after the effective date of the continuous-sexual-abuse-of-a-young-child statute. Thus, while the majority's conclusion that two or more acts of abuse occurred after September 1, 2007, may not be unreasonable, I do not believe it is sufficiently based on facts or evidence. Rather, it is based on speculation.

Based on the evidence presented in this case, and given the complete lack of temporal markers accompanying the incidents of sexual abuse described, I do not believe the jurors in this case could have convicted appellant if they had been properly instructed to disregard appellant's pre-September 1, 2007, acts. In fact, I do not believe such acts could have effectively been disregarded by the jury because on this record there is no way to separate out pre-September 1, 2007, acts from post-September 1, 2007, acts. At some point during appellant's sexual abuse of M.K., the continuous-sexual-abuse-of-a-young-child statute became effective. However, evidence of the

sexually abusive period covered most of M.K.'s life "for as long as [she could] remember," with no way to discern which or how many acts of sexual abuse happened before and which or how many acts occurred after the effective date of the statute. While the statute does not require that the State prove specific dates of abuse, it does require the acts of sexual abuse, separated by 30 days or more, to have occurred after the effective date of the statute. Here, under this jury charge, given the state of the evidence, there was no way for the jury to limit its consideration of evidence to incidents of abuse occurring after September 1, 2007. In light of the evidence presented at trial—particularly the broad chronological period of the evidence of appellant's sexual abuse of M.K., without distinction between conduct occurring before or taking place after the effective date of the statute—I believe the state-of-the-evidence factor weighs in favor of a finding of egregious harm.

*Arguments of Counsel*

The majority notes that in closing argument, the prosecutor correctly informed the jury that the continuous-sexual-abuse-of-a-young-child law went into effect on September 1, 2007, and that he also explained that this was the reason for the dates alleged in count one of the indictment. The majority contends that this argument directed the jury's attention to the effective date of the statute and reminded the jury of the significance of the dates alleged in the indictment. However, while the prosecutor explained that the offense did not exist before September 1, 2007, he did not explain that any underlying acts of sexual abuse that appellant perpetrated before the offense existed could not form the basis for his continuous-sexual-abuse conviction, i.e., that such conduct could not be considered as part of the "ongoing sexual abuse."

17

The majority also states that the prosecutor's argument drew the jury's attention to the application paragraph which contained the correct applicable dates when the prosecutor argued that appellant was "getting a break" on sexual abuse perpetrated before September 1, 2007.[15] However, in the rebuttal closing argument, the prosecutor emphasized the long-term nature of the sexual abuse:

> We talked about this in voir dire what continuous sexual abuse means. . . . "For a period of more than 30 days or greater than a month." You heard her words: "As long as I can remember. For my entire life." We met that element.

Later, the prosecutor argued:

> It wasn't one time. It was her whole life. Her whole life. It wasn't one time. She couldn't even tell you how many times that happened.

While the State's argument did not remind the jurors that the State was not required to prove the exact dates alleged, the argument emphasized how the evidence demonstrated that the abuse was long term. The State relied on the long-term nature of the abuse to satisfy its burden of proving the sexually abusive period of 30 days or more.

---

[15] The majority opinion actually indicates that the application paragraph "contained a correct statement of the law applicable to the case." However, while the application paragraph contained correct dates—that is, dates after the effective date of the statute—it did not contain language reflecting that the jury could not consider conduct occurring before those dates in convicting appellant of continuous sexual abuse of a young child. In my opinion, that constitutes "the statement of the law applicable to the case," the omission of which creates the error at issue here. I distinguish between providing correct dates and providing a correct statement of the law.

18

The State's argument failed to inform the jurors that count one required them to find two acts of sexual abuse separated by 30 days occurring on or after September 1, 2007, or that in making those findings they could not include any sexually abusive conduct committed by appellant before September 1, 2007. In fact, the argument potentially confused the jury by telling them, on the one hand, that the offense did not exist before September 1, 2007, but then emphasizing the long-term nature of the abuse, encompassing dates before the offense existed. I would conclude the arguments of counsel weigh in favor of a finding of egregious harm.

*Other Relevant Information*

The majority opines that the reading of the indictment at the beginning of trial, with correct applicable dates, contributes to a finding that the erroneous jury charge was not egregiously harmful.[16] However, from the beginning of the trial, the State focused on the long-term nature of the sexual abuse. The prosecutor started her opening statement by saying:

> "My whole life. As long as I can remember." Ladies and gentlemen, when [M.K.] was asked how long her father had been molesting her, that was her answer: "My whole life. As long as I can remember."

Later, the prosecutor informed the jury:

---

[16] Again, the majority indicates that the indictment contained "a correct recitation of the law applicable to the case." However, like the application paragraph, while the indictment alleged correct dates—that is, dates after the effective date of the statute—it did not state that the jury could not consider conduct occurring before the alleged dates in convicting appellant of continuous sexual abuse of a young child. As previously noted, I believe that is "the recitation of the law applicable to the case," the omission of which constitutes the error at issue here. Again, I see a distinction between providing correct dates and providing a correct recitation of the law.

19

[W]hen [M.K.] was asked how long her dad had been molesting her, that was her answer: "My whole life. As long as I can remember." When asked when? "Pretty much my whole life."

The majority acknowledges that throughout the course of trial the State emphasized the long-term nature of appellant's sexual abuse of M.K., making no distinction between abuse that occurred before September 1, 2007, and abuse that occurred after September 1, 2007. The majority also concedes that this factor weights in favor of a finding of harm. Nonetheless, the majority dismisses the harmful effect because appellant's extraneous conduct could be considered as circumstantial evidence and because of the inclusion of a limiting instruction regarding extraneous conduct in the jury charge. However, as previously discussed, based on the evidence at trial, there is no way to differentiate the direct evidence of the alleged conduct from the circumstantial evidence of appellant's extraneous conduct. Accordingly, I disagree with the majority that the harmful effect of the State's emphasis on the long-term nature of the sexual abuse can be disregarded. I find this to be relevant information that weighs in favor of a finding of egregious harm.

*Conclusion Regarding Harm*

Appellant was "entitled to be convicted upon a correct statement of the law." *Hutch*, 922 S.W.2d at 174. A jury that followed the trial judge's instructions would consider all the evidence presented at trial, including the testimony about acts of sexual abuse that occurred before September 1, 2007, because the evidence did not differentiate between those occurring before or after that date, and would very likely render a verdict in conflict with the savings clause to the bill creating the continuous-sexual-abuse statute. After considering the entire jury charge, the state of

20

the evidence (including the contested issues), the argument of counsel, and other relevant information in the record, I cannot conclude, as the majority does, that the jury-charge error complained of in appellant's first point of error did not rise to the level of egregious harm.

**CONCLUSION**

Based on my reading of the record and the *Almanza* factors, I would conclude that appellant was denied a fair and impartial trial with regard to count one, continuous sexual abuse of a child. While I recognize that the evidence against appellant indicates a long-term pattern of sexual abuse of M.K., I cannot overlook the error in the jury charge that, based on the evidence at trial, would have allowed the jury to convict appellant of continuous sexual abuse of a young child based on conduct that occurred prior to September 1, 2007, the effective date of the statute. Jury-charge error is egregiously harmful if it affects the very basis of the case or deprives the defendant of a valuable right. *See Stuhler*, 218 S.W.3d 719.

Here, the trial court's unqualified instruction that the dates alleged in the indictment were not binding and that the State could prove that the offense had been committed at any time prior to the return of the indictment "'present[ed] the jury with a much broader chronological perimeter than is permitted by law'" with respect to the continuous-sexual-abuse-of-a-young-child count. *See Martin*, 335 S.W.3d at 875–76 (quoting *Taylor v. State*, 332 S.W.3d 483, 488–89 (Tex. Crim. App. 2011)). Both the United States and Texas constitutions prohibit ex post facto laws. *See* U.S. Const. art. I, § 9 cl. 3; Tex. Const. art. I, § 16. This prohibition "bars application of a law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when

committed."[17] *Ortiz v. State*, 93 S.W.3d 79, 91 (Tex. Crim. App. 2002) (quoting *Johnson v. United States*, 529 U.S. 694, 699 (2000)) (internal quotation marks omitted). "The right to be free from ex post facto laws or the ex post facto application of a law is an 'absolute' right." *Phillips v. State*, 362 S.W.3d 606, 611 (Tex. Crim. App. 2011), *cert. denied*, 132 S.Ct. 1857 (2012).

The right of a person not to be criminally punished under a statute for conduct that, when committed, did not violate that statute is basic to our system of justice.[18] *See Phillips*, 362 S.W.3d at 611; *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002) (recognizing that constitutional prohibition of ex post facto laws is absolute systemic right). I would hold that the submission of the erroneous jury charge that failed to prohibit a conviction based on conduct that occurred prior to the effective date of the continuous-sexual-abuse-of-a-young-child statute deprived

---

[17]  The continuous-sexual-abuse-of-a-young-child statute imposes harsher sanctions for appellant's sexually abusive conduct than those statutes in effect when appellant perpetrated the sexually abusive acts. The minimum sentence for the continuous-sexual-abuse-of-a-young-child offense is 25 years, and the defendant is not parole-eligible. *See* Tex. Penal Code Ann. § 21.02(h) (West 2011) (offense punishable by imprisonment for life or any term not more than 99 years or less than 25 years); Tex. Gov't Code Ann. § 508.145(a) (West Supp. 2012) (inmate serving sentence for offense for continuous sexual abuse of a young child is not eligible for release on parole). In contrast, indecency with a child by genital contact, one of the underlying sexually abusive acts, has a punishment range of any term of not more than 20 years or less than two years. *See* Tex. Penal Code Ann. §§ 12.33, 21.11(d) (West 2011). The underlying sexually abusive offense of aggravated sexual assault of a child has a punishment range of life or any term of not more than 99 years or less than five years. *See* Tex. Penal Code Ann. §§ 12.32, 22.021(e) (West 2011). For both of these underlying offenses, a defendant is eligible for release on parole when the defendant's "actual calendar time served, without consideration of good conduct time, equals one-half of the sentence or 30 calendar years, whichever is less[.]" Tex. Gov't Code Ann. § 508.145(d)(1) (West Supp. 2012).

[18]  I do not suggest that appellant's sexual abuse of M.K. prior to the enactment of the continuous-sexual-abuse-of-a-young-child statute was not criminal conduct. But it was not criminal conduct under this statute. Nor do I suggest that the continuous-sexual-abuse-of-a-young-child statute itself violates the ex post facto clause. However, the law makes clear that a person cannot be punished under a statute for conduct that occurred before that statute took effect.

appellant of that valuable right and, on this record, egregiously harmed appellant. *See Stuhler*, 218 S.W.3d at 719. Accordingly, I would sustain appellant's first point of error. Because the majority does not, I respectfully dissent.[19]

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Filed:  January 31, 2013

Publish

---

[19] Because I would sustain appellant's first point of error and reverse his conviction for continuous sexual abuse of a young child on the grounds raised in that point, I do not address appellant's second and third points of error, which complain of additional jury-charge error in the court's charge for the continuous-sexual-abuse-of-a-young-child offense, or join the majority opinion as to these two points of error.